## Standard Oil Co. v. Hagan.

March 18, 1949.

Middleton, Seelbach, Wolford, Willis & Cochran, Chas. G. Middleton and Chas. G. Middleton, Jr. for appellant.

Oldham, Clarke, James M. Cuneo, and Allen, McElwain, Dinning, Clarke & Ballantine for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Rollin Kenneth Hagan recovered a judgment for $2,640 against the Standard Oil Company for injuries received while, on the latter's premises in Louisville. Hagan was employed by the Railway Express Agency as a truck driver, and on January 27, 1947, at the request of the Standard Oil Company, he drove onto its premises at Fifth and Bloom Streets in Louisville for the purpose of picking up freight. He stopped at the yard office where he signed certain papers for the shipment he was about to receive, and he was then directed by one of the Standard Oil Company employees to go to warehouse No. 2 to pick up a 350 pound barrel of iron lugs. Hagan drove to warehouse No. 2, and upon his arrival found a Standard Oil Company truck parked at the curb in the concrete driveway directly in front of the entrance to the warehouse. Between the driveway and the doorway of the warehouse is a concrete pavement which extends entirely across the front of the building and is referred to by appellant as a loading platform and by appellee as a sidewalk. It is 8 feet wide and extends about 8 inches above the driveway. At the entrance to the warehouse there are double doors, each 3 feet in width, which open outward onto the concrete pavement. Hagan was unable

to park his truck immediately in front of the entrance to the warehouse, and he asked M. A. Clemmons, driver of the Standard Oil truck, how long the latter would be there, and Clemmons responded: "I won't be here long." Clemmons had parked his truck in front of the entrance for the purpose of loading certain materials, including pipes or conduit. Hagan walked into the warehouse to check his freight, and, according to him, the pavement in front of the entrance was perfectly clear at that time. He remained in the warehouse about five minutes, and upon being informed that the Standard Oil truck had been moved he started out to move his truck into position to load the barrel of iron lugs. One of the double doors was locked, and in leaving the warehouse it was necessary for Hagan to use the door on his left. He opened this door, took one step, and as he put his foot down hit some pipes which Clemmons had placed there after Hagan entered the warehouse. Hagan was thrown out into the driveway and fell with his right leg bent under him. His right ankle was fractured, and he received other serious injuries. Jesse A. Abel, employed by the Standard Oil Company as assistant storehouse-keeper, testified that he walked to the door with Hagan and saw him fall. He stated that the pipes were stacked on the pavement or platform near the curb, and that Hagan stepped on them and fell. Hagan denied that Abel was present when the accident happened. Appellant, argues that it was entitled to a peremptory instruction because no negligence on its part was proved, that appellee was contributorily negligent as a matter of law, and that the instructions are erroneous.

It is appellant's contention that the pipes were on a loading platform which was being used for the purpose for which it was designed, and that no duty owing to appellee had been violated. The raised pavement along the front of the warehouse was more than a mere loading platform. In order to enter or leave the warehouse it was necessary to cross the platform at the point appellee was injured. Clemmons, driver of the Standard Oil truck, knew that appellee had entered the warehouse and would leave in a few minutes through the door in front of which the pipes were stacked. Hagan was a business invitee, and the appellant, though not an insurer of his safety, owed to him the duty of exercising ordinary care to see

that its premises were in a reasonably safe condition so as not unnecessarily to expose him to danger. Kroger Grocery & Baking Company v. Diebold, 276 Ky. 349, 124 S.W.2d 505; Shoffner v. Pilkerton, 292 Ky. 407, 166 S.W.2d 870. The rule is stated thus in Young's Adm'r v. Farmers & Depositors Bank, 267 Ky. 845, 103 S.W.2d 667, 669: "The duty owing by an owner or person in possession to those who come on the premises by invitation, express or implied, is not to insure his safety, but it is to use ordinary care to have the premises in a reasonably safe condition. He must exercise a protective vigilance to see that his invitees are not led into a trap or dangerous condition known, or which ought to have been known, to him, but hidden from the other or so concealed that he could not observe it in the exercise of ordinary care for his own safety."

According to the evidence for the appellee, the pavement or platform in front of the entrance was free from obstructions when he entered the warehouse, and the pipes were stacked immediately in front of the door during the short interval he was in the building. Thus a dangerous condition was created, especially for one who had just entered the building at this point. Appellee had the right to assume that no dangerous obstructions had been placed across the sidewalk which appellant's employees knew he must use in leaving the warehouse. There was evidence of negligence on the part of appellant, and it cannot be said that appellee, under the circumstances, was contributorily negligent as a matter of law. It follows that the court did not err in submitting the questions of negligence and contributory negligence to the jury.

The instructions as finally prepared and presented to the jury follow substantially the form which has been approved in similar cases. After the instructions were read by the court to the jury the court concluded that certain words should be added, and before the argument began the phrase 'to exercise ordinary care" was inserted in line 3 of Instruction No. 1, and the phrase "which caused said premises to be in an unsafe condition, if they were in such condition" was inserted in line 12. The instructions were not read to the jury after these interlineations were made, but the instructions with the interlineations were given to the jury when it

retired to the jury room. The bill of exceptions shows that the changes were made at the tables of the respective counsel in the presence of the jury, and that the trial judge, out of the hearing of the jury, advised counsel for both parties that they could comment on such interlineations if either of them so desired. Counsel for appellant made no objection to the interlineations, and did not move the court to reread the instructions to the jury. It is argued that the corrected instruction, even if proper, did not cure the erroneous instruction which had been read to the jury, and cases from this and other jurisdictions are cited in which the court held that an erroneous instruction followed or accompanied by a correct one is not cured by the latter as the jury is left at liberty to adopt either. One of the Kentucky cases cited is Stover v. Cincinnati, N. & C. R. Co., 252 Ky. 425, 67 S.W.2d 484. There, two separate written instructions were given, one of which was erroneous. That is not the case here. Only one written instruction was given, and the jury could not possibly have been misled. Counsel had ample opportunity to comment on and explain the corrections that had been made, and since they did not object at the time to the court's failure to reread the instruction, appellant cannot complain now.

The judgment is affirmed.