**WESTBOROUGH COUNTRY CLUB**
**v. PALMER et al.**
No. 14705.

United States Court of Appeals
Eighth Circuit.

May 4, 1953.

Rehearing Denied May 22, 1953.

Norman Bierman, St. Louis, Mo. (Norris H. Allen, William R. Gilbert and Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, Mo., on the brief), for appellant.

Robert C. Ely, St. Louis, Mo. (Wayne Ely and Ely & Ely, St. Louis, Mo., on the brief), for appellees.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from a judgment entered pursuant to verdicts in favor of appellees Ann Palmer and Gertrude Palmer against Appellant Westborough Country Club in an action brought by them against Westborough Country Club and one Louis Balazina to recover damages on account of personal injuries suffered by Ann Palmer. Plaintiff Ann Palmer received injuries when she was struck by a golf ball while a passenger in an automobile traveling along a highway over the golf course of Westborough Country Club. While there were two plaintiffs it is conceded by all parties that any liability to Gertrude Palmer is dependent upon whether or not Ann Palmer has a right to recover damages and hence on this appeal we may treat the case as if Ann Palmer alone were involved. It was alleged in the complaint that defendant Westborough Country Club was negligent in the construction and maintenance of its golf course and roadway which crossed the links leading to the clubhouse and swimming pool, it being alleged that it was necessary for Ann Palmer and the other occupants of the automobile in which she was a passenger to proceed from the public highway onto and along defendant's roadway and across the fairway of defendant's golf course so that she was likely to be struck by golf balls driven by players on the golf course, and that defendant Westborough Country Club knew or should have known that she was likely to be struck by golf balls driven into the area by players on its course. Plaintiffs also sought recovery from defendant Balazina on the ground that he had carelessly and negligently driven the golf ball which struck Ann Palmer when he knew or should have known of her presence in front of him and of the likelihood of her being injured.

Defendant Westborough Country Club answered denying negligence and pleading contributory negligence on the part of Ann Palmer.

At the time of receiving her injuries Ann Palmer was a girl 16 years of age. With six other companions she was an occupant of an automobile being driven on a highway over Westborough Country Club golf grounds toward the clubhouse and swimming pool of said club on its grounds. The road extended in an easterly and westerly direction and it was crossed by a fairway extending in a northerly and southerly direction. There was located on this fairway at a point approximately 60 yards south of the road a tee so that golfers in teeing-off would normally strike the ball toward and over and across said road, and there was a large tree located between the tee and the green which was in the nature of a hazard. Ann Palmer and her companions at the time of the accident resulting in her injuries were enroute to a swimming pool owned and operated by the Country Club and for the use of which it charged a fee. They were, it is conceded, invitees and Ann Palmer was not a patron

of the game of golf nor was she a spectator but her sole purpose of being on the golf grounds was to go swimming in the Country Club's swimming pool. As the automobile proceeded westward, 4 golfers were observed at the abovementioned tee. They were equipped with golf clubs and the driver of the car stopped it, apparently fearing that a player was about to tee-off toward the road. There was testimony that one of the players waved his arm indicating that he was signalling the driver of the car to proceed westward. The car then proceeded and apparently about the same time the defendant Balazina teed-off, striking the ball so that it would fly in a low course and thus miss the branches of the aforementioned large tree. The ball in its flight struck Ann Palmer inflicting personal injuries for which damages were sought to be recovered in this action. There was evidence that defendant Balazina struck the ball which hit Ann Palmer; that before teeing-off he looked for the presence or approach of any vehicle on the road but saw none and he then addressed the ball concentrating his attention and vision on the ball so that there intervened some considerable time between the time he looked for the presence of a car on the road and the time when he actually teed-off, and there was evidence that it was the usual practice and that it was professionally proper that the player after looking for the presence of any obstacle on the fairway would direct his sole attention to the ball and that normally some time estimated variously in length would elapse between the time the player looked for obstacles and the time he struck the ball. There was testimony by experts that the construction and maintenance of a golf course with the fairway crossing a road leading to the clubhouse and facilities was a usual and customary arrangement, but there was testimony that in the vicinity of St. Louis only 3 of the golf courses were so constructed and that 15 others were constructed so that the fairway did not cross the roadway leading to the clubhouse facilities. There was evidence that Ann Palmer was not a golfer, that she knew but little of the game, that she saw the golf players at the tee but did not know in what direction they would tee-off, and that she did not appreciate the danger in traversing this road in close proximity to the players. There was testimony that she had frequently passed over this roadway going to and from the clubhouse and other facilities during a period of about 8 years but that she was not a spectator of golf games on the golf course. There was also evidence that it was customary and in accordance with the rules of the game of golf that one teeing-off would give warning if anyone were in a position where he might possibly be struck by the ball by calling "Fore" and that no such warning was given by the defendant Balazina when he teed-off at the time here involved. The evidence will be further developed in the course of this opinion.

At the close of all the testimony defendant Country Club moved for a directed verdict which motion was denied and the case was submitted to the jury on instructions to which the Country Club saved certain exceptions. The jury returned a verdict in favor of the defendant Balazina and in favor of plaintiffs and against the Country Club. Pursuant to the verdicts returned the court entered judgment in favor of Ann Palmer for $6,000 and in favor of Gertrude Palmer for $1,000. From the judgment thus entered the Country Club prosecutes this appeal seeking reversal on substantially the following grounds: I. The court erred in denying its motion for a directed verdict in its favor. II. The court erred in denying the Country Club's motion for judgment notwithstanding the verdict for the reasons set out in its motion for directed verdict. III. The court erred in refusing to give the Country Club's proposed instruction which read as follows: "The court instructs the jury that if you find and believe from the evidence that the tee from which Balazina struck the ball, and the roadway on and over which the automobile in which plaintiff Ann Palmer was a passenger, was being operated and driven at the time of the incident in evidence, were maintained and located in a usual and customary manner similar to which tees and roads at other pri-

vate golf clubs and golf links are maintained and located, and if you find that it was not negligence on the part of defendant Westborough Country Club to so locate and maintain its aforesaid tee and its aforesaid road then your verdict will be for defendant Westborough Country Club." IV. The court erred in certain portions of its charge to the jury to which defendant Country Club excepted.

■ As preliminary to a consideration of the contention that the court erred in denying the Country Club's motion for a directed verdict it would seem appropriate to call attention to the rule that where the motion has been denied and the jury has returned a verdict the evidence must be viewed in a light most favorable to the prevailing party. We must assume that the evidence proved all facts which it reasonably tended to prove and the prevailing party is also entitled to the benefit of all favorable inferences that may reasonably be drawn from the facts and circumstances proven. We cannot concern ourselves with any question of conflict in the evidence but must assume that all such conflicts have been resolved by the jury in favor of the prevailing party. Neither is it our province to weigh the evidence nor consider the credibility of the witnesses.

■■ It is urged that no liability could be attributed to the defendant Country Club for the manner in which its golf course was laid out and maintained because it was laid out in the usual and customary manner. There was, it is true, some evidence that the construction of the golf course was in accordance with prevailing custom, but the witnesses who so testified admitted that in the vicinity of St. Louis out of some 18 golf courses only 3 were so laid out and maintained and we think the jury was not bound to find on this testimony that the defendant's golf course was laid out and maintained in the usual and customary manner of maintaining such courses in the vicinity where this course was located. But even if it should be conceded that this golf course was so laid out and maintained in accordance with the customary usage it does not follow, we think, that that alone would be a complete defense to this action. This

would not conclusively fix the standard of care required of the operator as a matter of law. It would only be evidence to be considered by the jury in its consideration of the question as to whether or not the operator of the course was in the exercise of reasonable care. Olds v. St. Louis Nat. Baseball Club, Mo.App., 119 S.W.2d 1000; Texas & P. Ry. Co. v. Behymer, 189 U.S. 468, 23 S.Ct. 622, 47 L.Ed. 905; Thurman v. Ice Palace, 36 Cal.App.2d 364, 97 P.2d 999; James v. Rhode Island Auditorium, Inc., 60 R.I. 405, 199 A. 293; Tite v. Omaha Coliseum Corp., 144 Neb. 22, 12 N.W.2d 90, 149 A.L.R. 1164. In Olds v. St. Louis Nat. Baseball Club, supra, the St. Louis Court of Appeals said [119 S.W.2d 1005], "Granting that one's conformity to established custom or usage may sometimes be a proper matter for consideration upon the question of whether sufficient care has been exercised in a particular instance, the fact of such conformity is nevertheless by no means controlling or conclusive upon the question of negligence, which must be determined in the light of what an ordinarily prudent person would have done under the same or similar circumstances. In other words, if what one does amounts to negligence, it is no defense to say that others engaged in the same business have themselves been habitually negligent in a like respect." In Texas & P. R. v. Behymer, supra, the Supreme Court among other things said [189 U.S. 468, 23 S.Ct. 623], "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."

■■ It is argued that it is a more dangerous construction to locate a fairway parallel to a roadway than to locate it across a roadway. This was a proper argument to be made to the jury and doubtless was made but we think the jury was not bound to so conclude. The argument assumes that a golfer will look before driving his golf ball and make certain that there is no one in front of him but the evidence was not such as required the jury to so find. The jury might well have believed that immediately before striking the ball the golfer

addressing the ball, concentrates his attention and eyesight on the ball and that a considerable time might well elapse between the time he looks and the time he strikes, during which an automobile might easily have moved into the fairway and course of flight of the driven ball. The argument also seems to assume that the golf course must be laid out so that the fairway parallels the roadway or crosses it. But it may be laid out so that the fairway neither parallels nor crosses the roadway. In fact, if the tee involved had been located on the north side of the roadway the peril would have been avoided. The danger of striking one passing over this roadway was enhanced by the fact that a large tree was located between the tee and the green so that it was necessary that the golfer should so strike the ball that it would not come in contact with the limbs of the tree and hence it would be comparatively low when it passed over the roadway. It is further argued that the failure of Balazina to shout a warning, "Fore," became the intervening, proximate cause of the accident. However this tee was so close to the roadway that a warning given at the time the ball was struck would have been of no avail whatever. The defendant Country Club could not rely upon that custom as it was bound to know that on account of the proximity of the tee to the roadway such warning would be futile. Two cases are referred to in which persons in automobiles were injured by golf balls. Gleason v. Hillcrest Golf Course, Inc., 148 Misc. 246, 265 N.Y. S. 886, 893; Castle v. St. Augustines Links, 38 Times Law Reports 615. In both of these the injured party recovered. In the Gleason case a golfer sliced his ball to the right, passing outside the boundaries of the fairway into the highway which paralleled the fairway and struck a windshield injuring plaintiff. In the course of the opinion it is said, "However, the case of Castle v. St. Augustines Links, supra [38 Times L.Rep. (Eng.) 615, King's Bench Division, England], which arose in England in 1922, is directly in point, and it was there held that the driver of the taxi could recover from the player on the theory that he was negligent in striking the ball while there

was some one upon the adjoining roadway who might be injured by a misdirected ball, and that he could also recover from the golf club on the theory that the particular portion of the grounds was a public nuisance under the conditions and in the place where it was situated. It was said that the club was under a duty to obviate the danger to persons upon the highway, and that this could be done in several ways, as by having a lesser number of holes, or omitting the objectionable hole, or playing it in a different way. [265 N.Y.S. 893, 894.]

"* * * the basis of liability is the same, whether the form of action be for nuisance or negligence. * * * Liability does not arise unless the dangerous condition is known, or with the exercise of due care ought to have been known; and it is the nature of the use itself which creates the duty. * * * failure to abate dangers which reasonable care would have revealed will charge the club with liability whether the form of action be negligence or nuisance." 265 N.Y.S. 894. What is said in Grimes v. American League Baseball Co., Mo.App., 78 S.W.2d 520, 524, may be here noted, "What she has complained of is that the additional boxes were allowed to encroach upon the playing field, and were placed and located in such close and dangerous proximity to the diamond that the boxes were apt to be struck by batted balls and the balls caused to be deflected from their course into the stand, creating a hazard to which plaintiff as a spectator at the game was not ordinarily to be subjected. * * * Whether the boxes built out in such unusually close proximity to the scene of play were temporary or permanent is not the point. The gist of the negligence is that an unusual and extraordinary hazard was thereby created, and whether the same was actionable negligence on defendant's part was for the jury to determine; the question being one about which reasonable minds might at best reach different conclusions. * * * so far as the plea of assumption of risk is concerned, upon proof of defendant's negligence it fell out of the case." In the Gleason and Castle cases it is pointed out that the golf club was under a duty to obviate the danger by various

suggested devices such as having a lesser number of holes or omitting the objectionable hole. Here the danger as has already been observed could very readily have been obviated by changing the location of the tee.

Appellant relies strongly on the case of Page v. Unterreiner, Mo.App., 106 S.W.2d 528, as authority for the proposition that the golf club had the right to rely upon golfers observing the rules of golf and not deliberately drive a golf ball over and across the roadway when there were persons or automobiles on the roadway. In that case a caddy was ahead of the golfer on the fairway and had a right to assume the golf player would warn him before driving his ball. The golf player in that case knew that the caddy was in front of the ball but notwithstanding this knowledge he failed to call "Fore," before driving the ball. In the present case the facts are quite different. Here the claim is that the golf club created a dangerous condition. If so it could not rely upon persons to follow the established custom so that the negligently created danger would not be fatal. But a further answer to this argument is that the jury might well have found and manifestly did so find that the player did follow the usual practice in striking the ball. It is further argued that no reasonable person would walk into the fairway when a player was about to hit a ball. But the evidence was such that the jury may well have found that plaintiff Ann Palmer did not know the defendant Balazina was about to hit the ball. In fact there was evidence that someone waved indicating that she should proceed and there was also evidence indicating that she did not know in which direction the ball might be struck. What is said in Paubel v. Hitz, 339 Mo. 274, 96 S.W.2d 369, 371, is here apposite. It is there said inter alia, " * * * 'The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted.' * * "

The authorities discussed by appellant on the question of the negligence of the Country Club are all readily distinguishable in their facts from the case at bar. We conclude that the evidence, viewed in a light most favorable to Ann Palmer, was sufficient to warrant the jury in finding the defendant negligent in constructing and maintaining its golf course in such a manner that the road leading to the club house and swimming pool traversed the fairway.

It is however argued in effect that Ann Palmer assumed the risk and that she had knowledge of the situation and as much knowledge of the dangers in the situation as did the Country Club. Confessedly the Country Club was not an insurer of her safety. She was however an invitee on this roadway and was a customer of the Country Club as a user of its swimming pool for a consideration. The principle that one who voluntarily assumes the risk of injury from a known danger is precluded from a recovery is recognized in negligence cases. One whose conduct has brought him within the operation of the maxim "Volenti non fit injuria" cannot recover on the basis of defendant's negligence. To be applicable however there must be knowledge and appreciation of the danger and the doctrine may not be invoked unless the particular condition or peril is known to the plaintiff. In cases where no contractual relations exist between the parties the doctrine is confined to such situations wherein the plaintiff not only knows and appreciates the danger but voluntarily puts himself in the way of it. The argument here assumes that the plaintiff knew as well as defendant knew the location of the fairway across the roadway and the dangers incident thereto. This assumption is not warranted by the evidence. Plaintiff testified that she did not know in what direction the golfers were going to drive the ball and she did not know that they drove the balls across the roadway. She might have been charged with that knowledge had she been conversant with golf but under the facts here disclosed the question was one for the jury. In this connection it must be borne in mind that the jury found the golf club negligent in the construction and main-

tenance of this roadway across its fairway. As was said in Grimes v. American League Baseball Co., supra, " * * * so far as the plea of assumption of risk is concerned, upon proof of defendant's negligence it fell out of the case."

■ It is next argued that plaintiff was guilty of such contributory negligence as to preclude her right to recover. The question of negligence and contributory negligence are ordinarily questions of fact for the jury. So far as she was concerned this roadway led to the swimming pool and it was the only route by which the swimming pool could be reached by her. She had nothing to do with the golf course and had no interest in and but little knowledge of the game. On the facts already adverted to it cannot be said as a matter of law that plaintiff was guilty of contributory negligence. But it is said that conceding defendant's negligence in the matter of constructing and maintaining the roadway across its fairway that this was not the proximate cause of plaintiff's injuries. And it is argued among other things that the negligence of defendant Balazina in striking the ball which injured plaintiff was an intervening cause. We have already pointed out that the jury might well have found under the evidence and manifestly did find that he was not negligent. It is also urged that the driver of the automobile was guilty of negligence in moving his car from a place of safety and driving it onto the fairway. There was evidence however that he had been signalled to proceed and he could not have assumed that the golf player, with knowledge of his presence, would strike the ball at the time he was crossing the fairway. If it should be conceded that the negligence on behalf of the player who struck the ball or the player who waved a signal to proceed was a concurring cause that would not preclude recovery against the Country Club as a joint tort feasor. In the Gleason case, supra, the court held that the negligence of the player of golf did not preclude recovery against the owner and operator of the golf course where the golf course owner was guilty of negligence in laying out and in maintaining the golf

course. The question of proximate cause must be determined upon the facts and circumstances of each case and it is ordinarily a jury question. The contention of the defendant that the negligence of defendant Balazina was an intervening cause cannot be sustained as the jury necessarily found that he was not negligent. He was not negligent because he conformed to the rules of the game which were such that a perceptible time intervened between the time the player looked for obstacles in the potential pathway of the ball and the time he struck the ball. The defendant was charged with knowledge of this fact or at least the jury might have so found from the evidence in this case. We think the evidence warranted the jury in finding that the negligence of the defendant was the proximate cause of plaintiff's injuries.

■ It is next argued that the court erred in refusing defendant's proposed instruction on customary and usual construction of courses. We have already considered this question. If it be conceded that the evidence warranted submitting such an instruction we cannot see how defendant could have been prejudiced by refusing the instruction proposed. The instruction reads as follows: "The Court instructs the jury that if you find and believe from the evidence that the tee from which Balazina struck the ball, and the roadway on and over which the automobile, in which plaintiff Ann Palmer was a passenger, was being operated and driven at the time of the accident in evidence, were maintained and located in a usual and customary manner similar to which tees and roads at other private golf clubs and golf links are maintained and located, and if you find that it was not negligence on the part of defendant Westborough Country Club to so locate and maintain its aforesaid tee and its aforesaid road, then your verdict will be for defendant Westborough Country Club." It is noted that under this instruction the jury was told that if they found that the construction and maintenance of defendant's golf course was in accordance with the usual and customary construction of such courses and that it was not negligence so to construct and maintain the golf

course then their verdict should be for the defendant. This instruction imposed upon defendant the burden of showing two things: First, that its golf course was laid out and maintained in the usual and customary manner, and second, that it was not negligent in so maintaining its golf course. Confessedly, no right of recovery existed unless defendant was negligent and if it was not negligent it would be immaterial whether or not its golf course were laid out and maintained in the usual and customary manner. There was no prejudice in declining to give this instruction.

It is finally argued that the court erred in giving certain quoted instructions. In this argument counsel in effect reargues the question of whether or not the court erred in denying its motion for a directed verdict and it reargues the question of contributory negligence and assumption of risk. The instructions must be considered as a whole. Defendant requested no instruction on assumption of risk and it is not our purpose again to consider the questions already considered in connection with defendant's argument in support of its motion for a directed verdict. There has been an overlapping of arguments on the various questions presented but we have attempted to consider all substantial questions involved on this appeal. On the entire record we are of the view that the trial court committed no reversible error and the judgment appealed from is therefore affirmed.