**M. H. SMITH et al., etc., Appellants,**

v.

**Clyde HENSLEY, Appellee.**

Court of Appeals of Kentucky.

Sept. 29, 1961.

As Modified on Denial of Rehearing
March 2, 1962.

Roy W. House, Manchester, Denney & Landrum, Lexington, for appellants.

A. E. Cornett, Hyden, for appellee.

STANLEY, Commissioner.

The action is by Clyde Hensley, one of eight partners constituting the firm of Mary Gail Coal Company, against all the partners, including himself by name, to recover damages for the value of a motor truck owned individually by the plaintiff, which he alleges was destroyed by the negligence of employees of the partnership.

The partnership operated a coal mine near Hyden and had its production transported by a fleet of thirty or more trucks to a tipple on a railroad at Manchester. Sometimes the trucks made several round trips a day. They were serviced by their several drivers at a gasoline filling station owned and operated by the company at the mine scales. Hensley's personally owned truck was one of the fleet. The evidence is skimpy. There is no evidence as to the contractual relationship, but the appellants do not question appellee's statement that his truck and driver had been "hired" by the company.

On June 10, 1958, plaintiff's driver had filled his gasoline tank preparatory to hauling a load of coal to the tipple when gasoline became ignited and fire destroyed the truck. The plaintiff alleged this was caused by the defendants' negligently permitting gasoline to be spilled from the pumps and to remain exposed on the ground. The defendants pleaded sole or contributory negligence of the plaintiff's driver or that the loss was an unavoidable casualty. Upon a verdict judgment for $4,000 was entered for the plaintiff against his seven partners.

The defendants have contended that the plaintiff may not maintain the action against his co-partners. Specifically, they say the manager and other employees of the mining partnership were agents of the plaintiff as well as agents of the defendants, and their negligence, if any, was imputable to the plaintiff as well as to the defendants. The record fails to disclose the articles or contract of partnership, but we may assume that it was a general, ordinary partnership, without limitations or reservations inter se.

The situation presents a novel question in the field of partnership law.

Various legalistic concepts could be invoked as a basis for denying a right of recovery to the plaintiff. One would be that a partner cannot sue the partnership because a litigant cannot sue himself. Another would be that if negligence of the partnership employees is to be imputed to the defendant partnership to establish a basis for liability, by the same token the negligence must be imputed to the plaintiff so as to bar recovery.

■ It is our opinion, however, that under a realistic approach, seeking to achieve substantial justice, the plaintiff should be held entitled to maintain the action.

■ It is true that an action at law *ordinarily* is not maintainable between a partner and his firm. Simons v. Douglas' Ex'r, 189 Ky. 644, 225 S.W. 721; Hibbard v. Browning, 237 Ky. 754, 36 S.W.2d 371; 68 C.J.S. Partnership § 109, p. 552. But the situation here presented is not an ordinary one. The law is well settled that a partner who has paid an obligation of the firm out of his own funds may obtain contribution from his co-partners. 68 C.J.S. Partnership § 116, pp. 557, 558. Also, a partner is entitled to reimbursement from the firm for losses suffered by him in the ordinary and proper course of the firm affairs. 68 C.J.S. Partnership § 82, p. 521. Compare Bower & Bower v. Collinsworth, 187 Ky. 1, 218 S. W. 455.

As concerns use of the doctrine of imputable negligence, courts have recognized that the doctrine is of artificial creation

and must in particular cases yield to reason and practical considerations. 65 C.J.S. Negligence § 157, p. 797. As with the related doctrine of respondeat superior, it had its origin in considerations of public policy, convenience and justice, and has been developed and extended out of the necessities of changing social and economic conditions. 35 Am.Jur., Master and Servant, sec. 543, p. 974. It has been held by this Court that the doctrine of imputed negligence is inapplicable in an action between members of a joint enterprise or partnership. See Dorris v. Steven's Adm'r, 266 Ky. 602, 99 S.W. 2d 755.

Clearly, if negligence of the partnership had caused damage to the property of a stranger, the partnership would be liable. KRS 362.210, 362.220. We do not find any just reason for denying recovery where the damaged property is that of a partner. It seems to us that the damage should be considered an ordinary business loss.

It perhaps could be argued that while public policy imposes liability upon a partnership for damages to property of strangers, there is no public policy requiring partners to share the loss from damages to property of one of their number sustained in carrying on the partnership business. However, in both instances the considerations of public policy grow out of the realities of the economic world, and we find in those realities no basis for saying that if there is damage to property of a stranger, or to property owned by the partnership, the partners must share the loss, but not so if the property is owned by one partner.

The law is well settled that if one partner negligently damages the property of another partner, the latter may recover from the former. 40 Am.Jur., Partnership, sec. 493, p. 468. Thus there is no basic public policy or rule of law to the effect that a partner who uses his own property in connection with the partnership business does so completely at his own risk. Why

then, should he be held to assume the sole risks when the damage is done by a partnership *employee* rather than by another member of the partnership? It is a common practice for partnerships to carry on their business through employes. The practical realities of the business world dictate that the partners should share the loss of damage to property resulting from the negligence of the partnership employees, regardless of who owns the property.

If it be considered, as appears actually to have been the case here, that the use of the plaintiff's truck was not *in* the partnership business but was a collateral use in connection with an independent contract between the plaintiff and the partnership, then there is more reason to impose a duty on the partners to share the loss, because there is no basis upon which it could be said that the plaintiff contributed his truck to the use of the partnership with an intent of the parties that he would assume all risk of loss.

We hold the action is maintainable.

On the merits, the appellants argue that the evidence did not go beyond permitting conjecture of negligence, or, at most, that the evidence was as consistent with the absence of negligence for which the defendants were responsible as with the existence of their negligence, hence, that the plaintiff failed to establish a legal cause of action, and the court should have directed a verdict for the defendants. McAtee v. Holland Furnace Co., Ky., 252 S.W.2d 427.

The evidence may be summarized. The several truck drivers filled their tanks at the company's pumps, withdrawing 1,000 to 1,500 gallons of gasoline a day. They often spilled gasoline on the ground and nothing was done about it. There was no contradiction. There was corroboration of the plaintiff's driver that on this occasion he had not spilled any gasoline in filling his tank. He testified he had not noticed any gasoline on the ground, but had not looked for any. The scales and gasoline pumps

were together. Jones testified he had had his load of coal weighed and filled his tank, got in the truck and started the motor. As he was pulling out, the motor backfired and fire blazed up through the floor of the truck. A bystander testified "the exhaust set the fumes on fire" and the fire started from the ground under the truck. There was evidence that gasoline ignited in three or four spots or places on the ground around the pumps.

For the defendants, one witness testified that gasoline was "pouring out of the tank" and the backfire of the motor set it on fire. On re-direct examination he stated the backfire "caught the gas on the ground and followed up to the tank."

In short, there was evidence that the cause of the fire and loss of the truck was igniting gasoline or gas vapor on the ground around the pump for which the driver was not responsible.

■ The plaintiff's driver was a business invitee on the defendants' premises. Standard Oil Company v. Hagan, 309 Ky. 767, 218 S.W.2d 969. The defendants' duty to him was, generally, to use ordinary care and vigilance to have the place in a reasonably safe condition, commensurate with hazards to be foreseen in the handling of such a potentially dangerous commodity as gasoline. Watson v. Ky. & Ind. Bridge & R. Co., 137 Ky. 619, 126 S.W. 146, 129 S.W. 341; Standard Oil Co. v. Marlow, 150 Ky. 647, 150 S.W. 832; 24 Am.Jur., Gasoline Stations, sec. 21; Standard Oil Co. of Kentucky v. Evans, 154 Miss. 475, 122 So. 735, Note 116 A.L.R. 1206. See Annotations 33 A.L.R. 774; 16 A.L.R.2d 799, p. 816.

The case was submitted to the jury by an instruction which permitted recovery by the plaintiff upon the finding of the failure of the defendants "to use ordinary care in the operation of their filling station, which included the further duty not to permit gasoline to be spilled and remain upon and around its premises in such quantity as to create a fire hazard to the vehicles of its customers." The instruction, of course, included the factor of proximate cause. An instruction was given on contributory negligence of the plaintiff's driver.

■ We think negligence of the defendants could reasonably and legitimately be inferred from the evidence, so it was for the jury to say whether or not there was negligence or contributory negligence as defined in the instructions. They appear to have properly submitted the law of the case. Blashfield, Cyclopedia of Automobile Law, sec. 5071, 5072, 5077.

■ The judgment is against the plaintiff's seven co-partners by name "doing business as Mary Gail Coal Company." This recognizes that the liability was that of the partnership firm, even though the plaintiff was a partner. 68 C.J.S. Partnership § 235. The negligence was that of the firm's employees, acting within the scope of their employment. The partners, who are liable jointly and severally (KRS 362.-220(1)) for obligations of the firm should bear their respective proportionate shares as may be determined by the contract of partnership. Moore v. Malis, 292 Ky. 106, 166 S.W.2d 52. The plaintiff, Hensley, must bear his part. So the judgment should provide that satisfaction be out of the assets of the partnership, as an "association" (KRS 362.175), before resorting to the individual members thereof. Planters'-Farmers' Warehouse Co. of Louisville v. Citizens' Bank of Falmouth, 224 Ky. 466, 6 S.W.2d 720; 40 Am.Jur., Partnership, secs. 18, 398, 399, 412, 453; 68 C.J.S. Partnership §§ 236, 240.

The judgment may be so modified and as modified it is affirmed.