**LEXINGTON COUNTRY CLUB, Appellant,**

**v.**

**Mary Elizabeth STEVENSON et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 12, 1965.

Rehearing Denied June 4, 1965.

Denney & Landrum, Charles Landrum, Jr., Lexington, for appellant.

Donald P. Moloney, Moloney & Moloney, Lexington, for appellee, Mary Elizabeth Stevenson.

Ben L. Kessinger, Jr., Harbison, Kessinger, Lisle & Bush, Lexington, for appellee, Henry O. Newman.

CLAY, Commissioner.

Plaintiff appellee Stevenson was awarded a judgment of $25,000 against defendant appellant, Lexington Country Club. She had sustained personal injuries when struck by a golf ball while riding as a passenger in an automobile being driven on the private driveway of the Club. Plaintiff also sued the golfer, appellee Newman, and the driver of the car in which she was riding. The claim against the latter was severed and continued for a separate trial, and the jury found for Newman. Many alleged errors are asserted.

The private driveway to the clubhouse crosses, at approximately a right angle, the fairway on the golf course which leads to the No. 7 hole. The automobile in which the plaintiff was riding had just turned onto the driveway from a public highway when a golf ball, hit by Newman in making an approach shot to the No. 7 green, entered the rear car window and struck plaintiff in the eye (causing its loss).

The purpose of plaintiff's trip was to enjoy the luncheon facilities of the Club. The driver of the car was a member. She and another lady had been invited by plaintiff to have lunch.

■ Ten days before the trial date, the circuit court, as authorized by CR 42.02, ordered a separate trial of the claim against the driver of the automobile and continued that case indefinitely. The basis of this ruling was that the illness of the driver would not permit her to attend the trial and her availability for such purpose could not be definitely determined. (Apparently she would not be available for at least a year.) On the other hand, the plaintiff was an elderly woman with an obvious interest in a reasonably prompt trial against the other defendants (the Club and the golfer). Appellant contends it was prejudicial error to thus remove the driver from the case for two reasons. The claim is made that she was an "indispensable party" under CR 19.01, which of course is untenable. The other objection seems to be that her testimony was important and that it would impair appellant's defense if she was not present as a defendant upon whom the jury could impose liability. It may be noted that the appellant obtained an affidavit from that defendant detailing her knowledge of the occurrence, which was read in evidence.

This is a matter within the judicial discretion of the trial court. Though claims of this sort should ordinarily be tried together,[1] the exceptional circumstances justified the court's action. The case of Caldwell v. Hoskins, Ky., 312 S.W.2d 616, is distinguishable on the grounds of (1) surprise and (2) absence of any justification for the court's ruling.

■ Appellant next contends plaintiff was a bare licensee and it owed her no duty to keep the premises reasonably safe. It seems clear the plaintiff was an invitee. The driver of the car was a member of the Club. The plaintiff was her guest. The Club is maintained for the use of members and guests. The fact that the plaintiff planned to pay for the lunches obviously does not take her out of the classification of a guest. In addition, the relationship was one of mutual benefit.[2] Appellant owed her the duty to maintain its premises in a reasonably safe condition. Standard Oil Co. v. Hagan, 309 Ky. 767, 218 S.W.2d 969; Rojo, Inc. v. Drifmeyer, Ky., 357 S.W.2d 33.

■ Appellant next contends the acts of the driver of the automobile and defend-

1. See Gladden v. Cia De Commercio Y Vapores S. A., 26 F.R.D. 155.

2. Appellant sought to introduce evidence to prove that the Club lost money on the sale of food. This evidence was, of course, inadmissible as irrelevant. If a person uses offered facilities in the manner and purpose for which they are intended, we must presume that use is beneficial to the person furnishing the facility.

ant Newman (the golfer) were independent intervening causes of this accident, thereby relieving it of liability. It is said appellant merely created the "condition" and the conduct of others constituted the proximate cause. An intervening agency which insulates from liability must be an independent force, not naturally arising out of or related to the negligently created condition. United Fuel Gas Company v. Thacker, Ky., 372 S.W.2d 784.

The golf course was built to be played upon with golf balls. The driveway was constructed and maintained for the passage of automobiles approaching the clubhouse. The normal and planned use of the premises was for golfers to play and motorists to traverse the driveway. Their acts were integral elements of the condition created by appellant. The danger only arose from their simultaneous use of the grounds. Not only could this be anticipated but it would be inevitable in the usual course of events over a period of time. Clearly the conduct of the golfer and the driver were not independent intervening acts. Being reasonably foreseeable, they did not insulate the Club from liability. Ambrosius Industries v. Adams, Ky., 293 S.W.2d 230; Greyhound Corporation v. White, Ky., 323 S.W.2d 578. See also Westborough Country Club v. Palmer, 8 Cir., 204 F.2d 143, which involved a golf course accident similar to the present one.

■ It is next contended the trial court erroneously admitted testimony of an expert golf course architect to the effect that this was a poorly laid out golf hole from the standpoint of safety. This witness also said that a hazardous and unsafe condition was created when there were no warning signs or special regulations with respect to its use. This evidence was relevant and admissible. The ordinary juror, if a non-golfer, would not necessarily be familiar with the hazard of soaring golf balls on a fairway. The witness was an expert in the design of golf courses. His opinion was that good designers would not incorporate such a hazard.

This witness was not, as appellant contends, expressing an opinion on the ultimate issue in the case. That issue was whether appellant was negligent in maintaining the potentially hazardous condition. The evidence pertained to a most significant factor relative thereto.[3] See annotation in 62 A.L.R.2d 1426. As we will discuss hereafter, this witness simply confirmed the obvious.

■ Appellant next contends the trial court erred in refusing to admit testimony of Newman with respect to how he possibly could have played the hole in a different manner and avoided this accident. Ignoring the speculative character of this evidence, it was obviously irrelevant on the issue of appellant's liability. The proof established that Newman was playing under accepted golf rules and in accordance with the normal method of making his shot. He was playing as appellant had designed the course to be played. The issue of appellant's negligence must be determined in the light of that circumstance. The offered evidence had no bearing on that issue.

■ We now reach the problem of the instructions. It is contended that Instruction No. 1 was in effect a directed verdict for the plaintiff because it required appellant to give "reasonable warning" to motorists about the condition, and admittedly no warning was given. We are inclined to agree with appellant, but assuming the instruction to have been erroneous, it did not constitute reversible error. Under the facts of this case the plaintiff was entitled to a directed verdict.

We do not think reasonable minds could differ on the question of whether the design and maintenance of this private drive-

---

3. No question seems to have been raised as to the admissibility of evidence with respect to the proper design of private golf clubs and golf links in Westborough Country Club v. Palmer, 204 F.2d 143, heretofore cited.

way, cutting across a much used golf fairway, without special regulations for the play of a hole or special warnings to motorists, constituted a continuing hazard to occupants of automobiles being driven thereon. This is particularly true with respect to the driveway near the entrance to the premises because a large post, a panel fence and a line of trees substantially impair the respective views of both the golfer and the motorist.

Appellant's own witness estimated that 20,000 golf balls a year would be hit across this driveway, and a substantial number of them would be traveling at a speed of 170 miles an hour. There was also evidence that automobiles had been struck on the driveway.

It is true that witnesses for appellant stated they did not consider the condition "extremely dangerous" or "a dangerous zone" and it appears other golf courses have somewhat similar conditions. There are, of course, so many degrees of "danger" that (assuming these witnesses were qualified to give such an opinion, which is open to question) their conclusions were ambiguous and of little value. The physical conditions, about which there is no dispute, convincingly established the existence of a built-in hazard. Plaintiff's expert witness, to whose testimony appellant strenuously objects, did no more than explain the obvious reasons why this was so.

We may concede that the condition was not one of extreme peril, and in that sense it was not "dangerous". Because of the small size of a golf ball and other factors, the odds as to any particular person's being injured are long indeed. However, the possibility of being struck in a car on this driveway during golf playing hours was an ever-present-hazard. No one could deny this. The question is whether it was negligence on the part of appellant to subject its members and guests to such hazard.

█ We have considered a number of cases involving injuries to persons on or near golf courses, baseball stadiums, and other playing fields. See Westborough Country Club v. Palmer, 204 F.2d 143; Brooks v. Bass, La.App., 184 So. 222; 23 A.L.R. 447; 69 A.L.R. 741; 16 A.L.R.2d 1458; 82 A.L.R.2d 1183; Louisville Baseball Club v. Hill, 291 Ky. 333, 164 S.W.2d 398. Courts generally recognize the liability of the owner of such premises for injuries inflicted by players participating in games thereon regardless of whether the person striking the ball could likewise be held liable for negligence. Juries in those cases (many of which involve persons injured *outside* the playing field) have consistently returned verdicts against the owners or operators thereof. We think the undisputed facts here are such that we can properly reach, as a matter of law, the same conclusion the jury reached in this case. That is, appellant violated its duty to plaintiff to maintain its premises in a reasonably safe condition for her use.

We are aware that the total elimination of this hazard might not be feasible. Nor do we suggest appellant is not justified in maintaining its premises in their present condition. From a practical standpoint, the probability of accidents may be such that appellant is willing to risk the chance. These considerations, however, do not relieve it of the charge that it was negligent in exposing the plaintiff to an unnecessary risk of serious injury which resulted from the concurrence of clearly foreseeable circumstances.

█ This brings us to the question of whether the trial court erred in failing to instruct the jury on the issue of plaintiff's contributory negligence. She was a passenger on the back seat of an automobile driven by a member of the Club. Though she was generally familiar with the grounds, there is no evidence whatsoever that she was aware of any danger, or did or failed to do anything which could constitute negligence on her part. As far as she is concerned, this was literally a bolt out of the blue. She was not familiar with the game of golf and had no knowledge of

the hazard. What was obvious to appellant, knowing all of the conditions, was not obvious to her. She certainly had the right to assume that no such hazard existed. She could not have been contributorily negligent, and the court properly declined to submit such issue.

■ Appellant further contends the trial court erred in not instructing the jury on the issues of "contribution" and "indemnity" which it had raised by cross-claim against Newman, the golfer. Both of these issues were effectively eliminated by the jury verdict which exonerated that codefendant.

It is vitally important as a matter of pleading, trial, and legal effect that we keep firmly fixed in mind the very significant distinction between *contribution* and *indemnity*. They involve entirely different concepts and considerations, which if ignored may lead to confusion.

■ The theory of *contribution* is that a party required to pay more than his pro rata share of a common liability to an injured party has a right of recovery for one-half the amount paid against a joint tort feasor in pari delicto, that is, one equally at fault from the standpoint of concurrent negligence of substantially the same character. KRS 412.030; 18 Am.Jur.2d, Contribution, section 50 (page 72); Consolidated Coach Corporation .v. Burge, 245 Ky. 631, 54 S.W.2d 16, 85 A.L.R. 1086; Deatley's Adm'r v. Phillips, Ky., 243 S.W.2d 918; Campbellsville Lumber Co. v. Lawrence, Ky., 268 S.W.2d 655; Employer's Mutual Liability Insurance Company v. Griffin Construction Company, Ky., 280 S.

W.2d 179, 184, 53 A.L.R.2d 967. On the other hand, a right to total *indemnity* may exist if the joint tort feasors are not in pari delicto and the party *secondarily* negligent asserts a claim against the one *primarily* negligent. Brown Hotel Co. v. Pittsburgh Fuel Co., 311 Ky. 396, 224 S.W.2d 165. With these distinctions in mind, we will examine the problems that are presented in this case.

*Where a plaintiff sues two joint tort feasors* who are in pari delicto, there cannot properly be a separate issue of *contribution* between them. This is so because, when the jury returns its verdict allowing the plaintiff recovery against one or the other, or against both jointly, or against each in different amounts,[4] it thereby resolves the issue by finally fixing the relative culpabilities and the respective liabilities to the plaintiff. Neither defendant could rightfully claim in such a suit (or a separate suit) that he had been required to pay more than his pro rata share of the common liability since the jury has determined the fair share of each.[5] See Elpers v. Kimbel, Ky., 366 S.W.2d 157. When, as here, the jury exonerates one codefendant of negligence, that effectively denies the right of the other to contribution. There is simply no separate issue to submit to the jury on this question.

It may be observed that while CR 13.07 authorizes a cross-claim for contribution between codefendants,[6] it is an illusory right as between joint tort feasors in pari delicto against both of whom the plaintiff has asserted his claim. In such case it is unnecessary and pointless to plead such a crossclaim.[7]

---

4. This is permissible under KRS 454.040, and constitutes a recognition of comparative negligence. Inconsistently, in a claim for contribution, such prorating apparently is not authorized.

5. In the event there was a joint judgment against both joint tort feasors in a single amount, if satisfied by one of them, he would have a right to contribution from the other. From a practical standpoint, this *subsequent* claim could better be asserted in another lawsuit (where in all probability the plaintiff would be entitled to a summary judgment).

6. See Clay, Kentucky Practice, Vol. 6, CR 13.07, Comment 3 (page 240).

7. See footnote 5.

It must be noted that what we have just said is limited to an action in which a claim is made against two or more defendants in pari delicto in the same action. If one defendant brings in a third party defendant under CR 14.01 to claim contribution *and the plaintiff asserts no claim against such third party,* a different situation arises. Unless the plaintiff consents to a trial of the issue of contribution between the two,[8] in which case the jury should be instructed on this issue, a separate trial thereof may be required.

Appellant asserts that if it could not claim contribution, it was entitled to *indemnity* against Newman on the ground that his liability was primary and its liability was secondary. In the pleadings appellant made this cross-claim against its codefendant and in the proper case this issue should be separately submitted to the jury under the principles set forth in Brown Hotel Co. v. Pittsburgh Fuel Co., 311 Ky. 396, 224 S.W.2d 165.

That case was tried prior to the adoption of our Civil Rules, and except for certain procedural differences which now prevail, the opinion contains an excellent analysis of the indemnity problem. It was there held that even though a plaintiff recovers a judgment against two joint tort feasors, if one is primarily liable and the other secondarily liable, the latter may in a subsequent suit assert a right to indemnity against the former. It was observed in that case that under the prevailing practice the issue could not be tried in the original suit because cross-claims between codefendants were not authorized. In our present practice, under CR 13.07, such a cross-claim is now permissible and in the case before us appellant sought indemnity against both of its codefendants, the driver of the automobile and Newman.

This issue was properly triable in this case and appellant would have been entitled to an instruction on it if the facts had tended to prove Newman primarily liable.[9] The difficulty with appellant's argument is that, if this was a case of primary and secondary liability (which we do not decide), it could be said appellant was the party primarily responsible and consequently would have no right to indemnity from any of its codefendants. As in the Brown Hotel case (311 Ky. 396, 224 S.W.2d 165), appellant negligently created the condition which ultimately resulted in injury to the plaintiff. Consequently the trial court did not err in declining to submit this issue.

Even if the court should have submitted the issue of indemnity (and ordinarily it should be submitted in a separate instruction or interrogatory which must be correlated with the basic finding of liability to the plaintiff), its failure to do so in this case could not have been prejudicial. The jury verdict which exonerated Newman of negligence effectively extinguished any cross-claim appellant could have had against him for indemnity. Newman could not be primarily liable if he was not liable at all. It will be noted in the Brown Hotel case (311 Ky. 396, 224 S.W.2d 165) the question of indemnity only arose after a jury had found negligence on the part of the party against whom such claim was asserted.

The conclusions we have reached above with respect to the instructions dispose of appellant's other objections thereto.

Appellant further objects to a part of the closing argument of plaintiff's attorney relating to the possible liability of the driver of the automobile. Whatever the meaning of this rather confusing single statement, even if improper, it could not have been prejudicial.

---

8. Ordinarily the plaintiff has a right to have his suit tried without becoming involved in a cross action between defendants. Consolidated Coach Corporation v. Wright, 231 Ky. 713, 22 S.W.2d 108.

9. In Gish Realty Co. v. Central City, Ky., 260 S.W.2d 946, an indemnity case, the real question was whether that issue had been tried in a prior federal court suit.

Appellant finally contends the verdict of $25,000 is excessive. We do not find it so.

The judgment is affirmed.

MONTGOMERY, J., dissenting.

PALMORE and HILL, JJ., dissenting in part.

PALMORE, Judge (dissenting).

In the absence of assumed risk or contributory negligence it seems to me that a guest using a private road crossing a golf course is in the same position as a member of the general public using a public road running through a golf course. I therefore agree that the club which maintains such a golf course should be liable as a matter of law to the unsuspecting victim struck by a golf ball while he is using the road for its intended purpose. But I believe also that the golf player ought to be held equally liable. He is just as aware of the danger to innocent third parties as the club is. He is not forced to play on the course, and if the course is so laid out that he is invited to play his ball close to or across a road, public or private, I think he should do so at his own risk, always. This viewpoint is not based on precedent, because I am aware that the golfer's negligence is generally held to be a matter for the jury to decide. But perhaps the courts that have written the law that way have been country club oriented. I think the average man in the street, by and large, would feel differently. And he is the only true source of the common law.

It follows that I would hold the golfer and the country club in pari delicto and require contribution.

HILL, J., joins in this dissent.

MONTGOMERY, Judge (dissenting).

The ground for my dissent is that the trial judge was guilty of an abuse of discretion in permitting a separate trial for the driver of the car in which Mrs. Stevenson was riding. As I see it, the negligence of the driver, Mrs. Davis, was the primary and possibly the sole cause of the injuries suffered.

The following uncontradicted statements made by Mrs. Davis in an affidavit filed show her negligence, to-wit:

"I drove my car, a Cadillac automobile, to the Lexington Country Club, at the specific request and direction of Mrs. George Stevenson. Since she was the hostess I was pleased to drive wherever she desired to take us to lunch * * * I slowed down to make a right hand turn into the Country Club entrance. * * * I did not stop at the entrance to the Country Club to look for golfers on fairway number seven over which the driveway crosses as I turned into the Country Club. All three of us were talking and engaged in idle conversation * * * And I did not look to either my left or to my right in the fairway to the seventh hole for golfers and do not know whether there were any golfers there or not, though I did know this was Sunday afternoon and that golfers would likely be on the seventh hole * * * I could have seen golfers anywhere on the seventh fairway as I entered the Country Club if only I had looked for them. Golfers using fairway No. 7 are not difficult to see as you enter the driveway entrance. However, on this occasion I did not look for golfers * * * I was aware that golf players playing No. 7 hole drive their golf balls across the driveway and across the roadway * * * I knew of the custom among members of the

**146**

Club for automobiles to yield to the golfers. But on this occasion we were talking and I didn't think about it."

In the complaint filed against the country club, the golfer, and the driver, Mrs. Davis, it was alleged that the negligence of the three defendants "acting independently, jointly and concurrently" brought about the injuries of the plaintiff. The issue as to which party or parties were liable should have been determined by the jury in one trial. To try the issue piecemeal almost inevitably would result in an unfair trial and an injustice to one or more of the parties. Here, the country club has been immeasurably prejudiced by the absence on the trial of the submission of the issue of Mrs. Davis' negligence. I am sure that Mrs. Davis' counsel was equally as cognizant of this advantage as appellant's counsel was conscious of the disadvantage.

The fact that Mrs. Davis might not have been able to attend the trial is not sufficient justification for a separation. The evidence could have been presented in her behalf, and the issue of her liability could and should have been submitted at the same trial in which this issue as to the country club and the golfer was determined.

The only suggested justification for the separation was that Mrs. Davis could not by reason of her health be present at a trial for a year and her friend, Mrs. Stevenson, the plaintiff, could not wait for a later trial on account of her (Mrs. Stevenson) health. In fairness, the appellant should not be made to suffer to the advantage of either Mrs. Davis or Mrs. Stevenson. Additionally, the questions raised as to the instructions, contribution, and indemnity emphasize the error.

Accordingly, I dissent.