liLOBRANO, Judge.
Third-party defendants, Board of Commissioners of the Port of New Orleans (Dock Board) and the Board of Levee Commissioners of the Orleans Levee District' (Levee Board), were dismissed from the third party claims brought against them by the principal defendants by way of motions for summary judgment. The principal defendants, Michael Chambers, American Tugs, Inc., Phoenix Assurance Company and Fireman’s Fund Insurance (appellants) perfect this appeal urging error by the trial court in granting the summary judgments.

FACTS AND PROCEDURAL HISTORY:

The pleadings in this case allege the following facts: On June 8, 1994, Roscoe Bog-uille, Jr. was fishing from a skiff anchored in Lake Pontchartrain approximately one quarter mile north of the Seabrook Bridge in New Orleans. Shortly after noon, the steel, diesel powered towboat, Repent, which was piloted by Michael Chambers and owned by American Tugs, Inc., proceeded northbound with three barges in tow out of the Inner Harbor Navigation Canal (Industrial Canal) and passed through the Seabrook Bridge into Lake Pontchartrain. The Seabrook Bridge was opened by the bridge tender who was employed by the |2Levee Board. The bridge is owned and operated by the Levee Board. At approximately 12:25 p.m., the lead barge of the tow collided with Boguille’s anchored skiff. Just before the collision, Boguille apparently realized the tow was going to hit his skiff so he jumped into the water. Despite rescue efforts, Boguille drowned.
Boguille’s widow filed suit individually, in her capacity as the personal representative of the decedent and in her capacity as the personal representative of decedent’s three children. Named as defendants were Chambers, American Tugs, Inc. and their liability insurers, Phoenix Assurance Company of New York and Fireman’s Fund Insurance Company.
The defendants filed a third party demand against the Dock Board and the Levee Board alleging that a cause of the accident was the third party defendants’ failure to fulfill their mandated obligations with respect to regulating the commerce and traffic of the port and harbor of New Orleans, preventing fishing in the area where Boguille was fishing in the Industrial Canal, policing their areas of re *585 sponsibility and enforcing their ordinances. They also filed two supplemental and amended third party petitions alleging additional reasons why the third party defendants should be held liable.[1]
_JjBoth third party defendants filed motions for summary judgment. The Levee Board argued in its motion that as a public entity, it owed no duty to prevent the decedent from fishing in the area of Lake Pontchartrain where he drowned. In support of its motion, the Levee Board filed a memorandum, a statement of uncontested facts, a Dock Board “no fishing” ordinance, excerpts from the deposition of Michael Chambers and a map of the collision site.
The Dock Board argued in its motion that it had no jurisdiction over the open waters of Lake Pontchartrain where the decedent drowned. In support of its motion, the Dock Board filed a memorandum, a statement of uncontested facts, the Dock Board “no fishing” ordinance, excerpts from the deposition of Michael Chambers, and a map of the collision site.
Appellants filed a memorandum in opposition which included the following exhibits: 1) the United States Coast Guard accident report, 2) the Wildlife and Fisheries accident report, 3) the statements of Michael Chambers and Eugene Light, 4) the deposition of Eugene Davis and exhibits, 5) plaintiffs answers to defendants’ first set of interrogatories, 6) the Dock Board’s answers to defendants’ first set of interrogatories, 7) the Dock Board’s answers to defendants’ second set of interrogatories, and 8) the Levee Board’s answers to defendants’ first set of interrogatories.
The trial judge granted summary judgment in favor of the Levee Board and Dock Board. Defendants/third party plaintiffs appeal.
Summary judgments are reviewed on appeal de novo. Smith v. Our Lady of the Lake Hospital, 93-2512 (La.7/5/94), 639 So.2d 730. The summary judgment article, LSA-C.C.P. art. 966, was amended by the Louisiana Legislature in 1996. 1996 La. Acts, No. 9. The amended version of article 966 became ^effective on May 1, 1996[2] and states *586 that the summary judgment procedure is favored and “shall be construed to accomplish these ends.” We interpret the amended version of C.C.P. art. 966 to be procedural in nature and, therefore, subject to retroactive application. LSA-C.C. art. 6.
| gHowever, regardless of whether or not summary judgments are favored, the amended version of C.C.P. art. 966 does not change the law regarding the burden of proof in a summary judgment proceeding. The burden of proof remains on the mover to show “that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.” LSA-C.C.P. art. 966 C. Only after the mover has met this burden may summary judgment be rendered against “an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.” LSA-C.C.P. art. 966 C. Therefore, if genuine issues of fact remain, this Court must still reject summary judgment even though this procedure is now favored.
Appellants argue that the trial court erred in the following respects:
1) In failing to recognize that jurisdiction of the Dock Board and/or Levee Board extended to the area where the accident occurred.
2) In failing to apply a duty/risk analysis in maldng its determination.
3) In relying on the “public duty” doctrine to absolve both third party defendants from responsibility.
Appellants’ reply brief succinctly summarizes their arguments by stating: “This is a case of negligence which involves, amongst other things, the complete lack of any effort to provide for reasonable warnings or safeguards or to enforce the no fishing ordinance in the channel even as defined by the appel-lees.”

ENFORCEMENT OF THE NO-FISHING ORDINANCE/PUBLIC DUTY DOCTRINE:

|6The Dock Board, to insure safe maritime traffic in the Industrial Canal, in 1966 passed an Ordinance which prohibited, inter alia, fishing in the Canal. Specifically, the revised and latest version of the ordinance,[3] in Section (5) provides:
The phrase “Inner Harbor-Navigation Canal” shall be construed to mean and embrace the entire length of the Inner Harbor-Navigation Canal as well as the waters of Lake Pontchartrain which form the navigational approaches thereto, i.e, that area of the watei-way approaches as well as the waters on either side of the fender system extending from the face of the east dolphin approximately 100 feet, from the face of the west dolphin, approximately 42 feet, and northward from the face of both dolphins 225 feet.
Initially, appellants argue that the failure of both the Dock Board and Levee Board to enforce this ordinance was a proximate cause of Boguille’s death.[4] Specifically, appellants assert that the ordinance created a special duty to the decedent and that any reliance by the trial court on the “public duty” doctrine to exonerate both boards was error.
The public duty doctrine mandates that a plaintiff cannot recover against a governmental entity or public official or then-employees or officers unless he can prove facts which show that the defendant owed him a special duty outside of the one owed to the general public. Kramer v. Continental *587 Casualty Co., 92-1131 (La.App. 3rd Cir. 6/22/94), 641 So.2d 557, writ not considered, 94-2576 (La.12/19/94), 648 So.2d 399, writ denied, 94-2473 (La.12/19/94), 648 So.2d 402; 94-2474 (La.12/19/94), 648 So.2d 403; and 94-2475 (La.12/19/94), 648j7 So.2d 403. Appellants cite numerous cases in support of their position that the well established exception to the public duty doctrine, namely the special relationship exception, is applicable in this case. See, Stewart v. Schmieder, 386 So.2d 1351 (La.1980); Kramer v. Continental Cas. Co., supra.
In Steivart, supra, the Louisiana Supreme Court noted:
[I]n jurisdictions where the “public duty doctrine” is applied, it is subject to the important exception that liability can be founded upon the violation of a duty that would be generally considered to be owed to the public, if the statute or ordinance setting forth the duty indicates, by its language, that the duty is designed to protect a particular class of individuals. Stewart v. Schmieder, supra, at 1358.
Even though we agree with appellants that Louisiana decisions appear to be inconsistent in the application of the public duty doctrine, i.e. when the special relationship exception is applicable, we find that the facts of this case do not require us to resolve those inconsistencies.
It is undisputed that the decedent was anchored beyond the territorial limits set forth in the “No Fishing” ordinance.[5] Thus, the ordinance did not create any duty on the Levee Board or the Dock Board at that location. Neither entity could have enforced the ordinance in the location where decedent was anchored. Therefore, any omission or neglect to enforce the ordinance is meaningless since neither Board had enforcement powers in the area where the collision occurred. In fact, had enforcement been attempted, decedent could have ignored it, or even sued for false arrest.
IsAppellants argue further, however, that because a “historically and commercially recognized navigation channel” extends north into Lake Pontchartrain a distance of approximately 1.5 miles (to the end of the Lakefront Airport runway), either the Dock Board or the Levee Board, or both, had a duty to protect the decedent. They argue that both boards had obligations to post signs, navigation aids or other warnings of the potential dangers of commercial traffic. They further point out that the Levee Board, because of its operation of a public boat ramp near the base of the Seabrook Bridge, had an obligation to warn boaters of the hazards of commercial traffic. Both boards respond that they have no jurisdiction to do anything in the area where the collision occurred and therefore no duty was owed by them to the plaintiff.
The factual supposition of a historical channel relied on by appellants is based on the deposition testimony of Captain Chambers and the bridge tender, Davis. Although that supposition is certainly subject to dispute, for discussion purposes, we will assume that there exists a channel extending north into Lake Pontchartrain which is utilized by commercial traffic. Given that fact, appellants’ argument raises the duty/risk analysis which they complain was ignored by the trial judge.
In the classic duty/risk analysis, one of the inquiries the court must answer is: “What, if any, duties were owed by the respective parties?” Mart v. Hill, 505 So.2d 1120, 1122 (La.1987). The particular facts and circumstances of each individual case determines the extent of the duty and the resulting degree of care necessary to fulfill that duty. Kent v. Gulf States Utilities, 418 So.2d 493 (La.1982). A duty may be imposed by legislation, ordinance or rule of law. Fowler v. Roberts, 556 So.2d 1 (La.1989).

hORLEANS LEVEE BOARD:

The only statutory mandate remotely suggesting that the Levee Board has any *588 jurisdiction or authority over the area where the collision occurred is La.R.S. 38:307 which provides in pertinent part:
[The Levee Board] shall have full and exclusive right, jurisdiction, power and authority to locate, relocate, construct, maintain, extend and improve levees ... and to conduct all dredging operations necessary in connection therewith ... at a distance not to exceed three miles from the present shore line....
In Socorro v. City of New Orleans, 579 So.2d 931 (La.1991), our Supreme Court affirmed this court’s conclusion that the above statute did not give the Levee Board custody or “garde” over the entire three mile area because the Board had not reclaimed the area at issue in that case. Id. at 937. For that same reason, the Levee Board did not have custody or control over the area in question in the present case.[6] Hence, no duty can be imposed on the Levee Board on those grounds.
Appellants argue, however, that because the Levee Board operates a public boat launch near the Seabrook Bridge, it had a duty to post warnings about the risks and dangers of fishing in the area of the lake north of the bridge. Appellants suggest that because the Levee Board had knowledge of the “No Fishing” ordinance and was charged with its enforcement, it was well aware of the dangers boaters, in the area in question, might encounter and had a duty to warn them of those dangers. We disagree.
It would be unreasonable to impose a duty on the Levee Board to warn boaters of the dangers inherent in utilizing the waters of Lake Pontchartrain. _[ipWhile we recognize that duty should not be decided in terms of a plaintiffs knowledge or presumed knowledge, Murray v. Ramada Inns, Inc., 521 So.2d 1123, 1136 (La.1988), the lack of proximity or connexity between the Levee Board’s launch area and the accident site support the conclusion that it would be unreasonable to impose a duty to warn of dangers inherent in boating in that area. The Levee Board exercised no control over that part of the lake and this court will not impose a responsibility on the Board because of its operation of a nearby public launch. Nor would it be reasonable to impose a duty because enforcement of the Dock Board’s ordinance was transferred to the Levee Board.

DOCK BOARD:

There are no statutorily mandated territorial limits of jurisdiction for the Dock Board.[7] Act 244 of 1914 authorized the construction of a navigation canal connecting the Mississippi River and Lake Pontchartrain. The Dock Board was authorized, by Act 3 of 1918, to carry out the mandate to build and operate the navigation canal. The Dock Board “shall regulate the commerce and traffic of the port and harbor of New Orleans in such manner as may, in its judgment, be best for the maintenance and development thereof.” La.R.S. 34:21 A(l). By ordinance, it is empowered to “make rules and regulations for the conduct, management, and control of the port, its commerce, traffic and navigation, [and] the waters and landings within its territorial jurisdiction.... ” La.R.S. 34:25 B.
Pursuant to the above cited authority, the Dock Board adopted the previously described “No Fishing” ordinance. Despite the fact that the accident | noccurred well beyond the territorial limits of the “No Fishing” ordinance, appellants argue that the Dock Board still had a duty to warn. In support, they rely on the principle that once the Dock Board exercised its discretion to'undertake the “No Fishing” zone, it was obligated to act carefully and prudently. We disagree.
 In reality, appellants argument is that the Dock Board is responsible because it failed to extend the “No Fishing” ordinance the length of the so-called 1.5 mile historically recognized channel. That argument, how *589 ever, ignores the provisions of La.R.S. 9:2798.1(B), which grants governmental units qualified immunity from liability “based upon the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts.” The statute protects a governmental agency from liability at the policy making or ministerial level, not at the operational level. Fowler v. Roberts, 556 So.2d 1, 15 (La.1989). The two step analysis to determine if the statute applies requires the court to first decide if the governmental action is a matter of choice, and if so, whether the government’s selection of alternative choices was policy based. Rick v. State, DOTD, 93-1776 (La.1/14/94), 630 So.2d 1271, 1276.
Obviously, once the Dock Board passed its “No Fishing” ordinance, its failure to enforce the ordinance was at the operational level. However, as we have repeatedly stated, enforcement of the ordinance in this case would have been meaningless. The decedent was outside the territorial limits of the ordinance. The question then becomes whether the Dock Board’s decision to limit the ordinance to 225 feet north of the dolphins was a policy decision. We conclude that it was and thus falls within the protection of La.R.S. 9:2798.1.
liaAt the time the ordinance was adopted, the Dock Board had various options as to its effective limits. It was authorized, by statute, to use its discretion in the regulation of commerce and navigation in the Industrial Canal. That discretion was exercised when passing the “No Fishing” ordinance. We hold that discretionary immunity absolves it from liability in its decision to set the territorial limits of the ordinance’s application at 225 feet north of the dolphin. Irrespective of whether commercial traffic utilizes a specific channel when entering Lake Pontchartrain from the Industrial Canal, the Dock Board’s duty extended to the limits of its ordinance and no further. Responsibility cannot be imposed upon it because of its decision to regulate use and traffic up to a specified distance north of the Seabrook Bridge. For that reason we conclude the trial judge correctly granted the Dock Board’s summary judgment.

NEGLIGENCE OF THE BRIDGE TENDER:

Appellants argue that the Levee Board, as the employer of Eugene Davis, the bridge tender, owed a duty to warn Captain Chambers of decedent’s presence before entering the lake. In support of their argument, appellants cite Davis’ deposition wherein he stated it was part of his job to warn approaching traffic if the channel was not clear. Davis testified that it was not until he was lowering the bridge after Chambers’ vessel had cleared it that he looked up and saw decedent’s vessel. He immediately informed Chambers of that fact.
The Levee Board’s response to this argument is simply that its bridge tender had no duty to warn decedent who was anchored one-quarter mile into the lake. It relies on the remoteness in distance and the remoteness in relationship between the parties to support its no duty argument.
_[isBased on the record before us, we cannot determine the duties of a bridge tender. Given the circumstances of this case, factual issues need to be resolved in order to make that determination. For instance, if the ocean liner QE II was anchored in the same location as decedent, presumably the bridge tender would have a duty to warn of its presence. Arguably, that duty may only be owed to the traffic passing through the bridge. However, it would be just as reasonable to assume that that duty included within the scope of its protection, the risks encountered by decedent. In this summary judgment case, we cannot say as a matter of law that the Levee Board’s bridge tender had no duty to decedent. For that reason we reverse the summary judgment in favor of the Levee Board.
Accordingly, for the reasons assigned the judgment dismissing the Dock Board is affirmed. The judgment dismissing the Levee Board is reversed and the case is remanded for further proceedings limited to the issues of whether the bridge tender owed a duty to decedent and, if so, whether breach of that duty was a cause of this accident.
*590 AFFIRMED IN PART; REVERSED IN PART; REMANDED.

. In their original brief, the Levee Board argues that the third party plaintiffs failed to obtain leave of court before filing their first and second supplemental and amended third party petitions. Therefore, it argues that the allegations in these pleadings were not properly before the trial court and should not have been considered.
The record shows that the Levee Board filed exceptions to the third party plaintiffs' first and second supplemental and amended third party petitions on the grounds of insufficiency of citation or service of process, non-conformity with Code of Civil Procedure Article 1151 and res judicata. However, the record does not show that the trial court ruled on exceptions, although during argument counsel stated that there was a ruling on the res judicata exception but none on the article 1151 argument. Irrespective, the Levee Board did not appeal this issue nor did it answer the appeal or seek supervisory writs. Under these circumstances, this Court is precluded from considering any issues not the subject of this appeal. LSA-C.C.P. art. 2133; Chatelain v. Circle K Corp., 94-0227 (La.App. 4th Cir. 10/13/94), 644 So.2d 1079.

. The 1996 amended version of LSA-C.C.P. art. 966 states as follows:
A.(l) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff’s motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.
D. The court shall hear and render judgment on the motion for summary judgment within a *586 reasonable time, but in any event judgment on Ac motion shall be rendered at least ten days prior to trial.
E. A summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
F. A summary judgment may be rendered on the issue of insurance coverage alone although there is a genuine issue as to liability or the amount of damages.
G. Notwithstanding any other provision of this Article to the contrary, the burden of proof shall remain with the mover.

. Apparently the original ordinance was adopted September 7, 1966 and revised on September 26, 1973, August 21, 1985, February 11, 1988 and finally in April of 1988.

. There is evidence in the record, i.e. the warning signs promulgated by the Dock Board, which suggests that enforcement of the Ordinance was also vested in the Levee Board. For purposes of our discussion, we will assume the Levee Board had the authority to enforce the ordinance.

. The record evidence shows that the collision occurred between 840 and 1320 feet north of the Seabrook bridge, well into Lake Pontchartrain. Although there is no specific evidence of how far from the bridge the last dolphin is located, based on the testimony of Captain Chambers, he had passed the last dolphin at the time of the collision. Factoring in the length of the tow, decedent was well past the territorial limits of the ordinance.

. It is a reasonable conclusion that custody and control would not vest in the Levee Board until it reclaimed, used or conducted operations within the area at issue.

. The Dock Board was created by Act 70 of 1896. The preamble merely states that the Port of New Orleans has extended beyond the limits of the City of New Orleans, and thus the necessity of establishing a commission comprising representatives of Orleans, Jefferson and St. Bernard Parishes.