835 So.2d 416 (2003)
Robert J. McGUIRE
v.
NEW ORLEANS CITY PARK IMPROVEMENT ASSOCIATION, and ABC Insurance Company.
No. 2002-C-1401.
Supreme Court of Louisiana.
January 14, 2003.
*417 Richard P. Ieyoub, Attorney General, Susan H. Lafaye, Baton Rouge, Counsel for Applicant.
David A. Abramson, Lewis, Kullman & Sterbcow, New Orleans, Counsel for Respondent.
JOHNSON, Justice.
This is a personal injury case involving a non-golfer, who was struck in the groin area by a golf ball while jogging near one of New Orleans City Park's golf courses. The plaintiff sustained a serious injury to his right testicle, which ruptured, requiring surgery and partial removal. As a result of the injury, the plaintiff sued New Orleans City Park Improvement Association, which operates City Park, and the State of Louisiana, which insures the facility. The trial jury found City Park negligent and assessed it 40% fault and assessed the plaintiff with 60% comparative fault. City Park appealed this ruling. The court of appeal affirmed the jury's findings. City Park filed this writ of certiorari, which we granted, to determine whether City Park owed a duty to non-golfers jogging near a golf course. Under these circumstances, we find that City Park's golf course did not present an unreasonable risk of harm. City Park therefore had no duty to provide additional protection or warnings to a non-golfer.

*418 FACTS AND PROCEDURAL HISTORY
On April 25, 1994, the plaintiff, Robert McGuire, and two of his friends, Ron Riggle and Dr. James Moises, were jogging on Palm Drive in New Orleans City Park near the Bayou Oaks Little Course. Three of the park's golf courses are north of the interstate and railroad tracks. The Little Course is also called the South Course. At trial, the plaintiff testified that he began jogging on City Park Avenue, where he met his two friends, turned right onto Marconi Drive to Tad Gormley Stadium, where they turned right and entered City Park, down Franklin D. Roosevelt Mall veered left on Golf Drive, which becomes Palm Drive once the bridge is crossed.[1] As they were jogging on Palm Drive, after crossing the bridge near South Course Hole No. 3, a golf ball landed on the roadway in front of the plaintiff then bounced and struck him in the groin area, causing his right testicle to rupture. As a result of the injury, the plaintiff had surgery and a portion of his right testicle was removed.
New Orleans City Park covers 1500 acres of land, and is the fifth largest urban park in America. It has four golf courses, with 22 miles of unrestricted public roadways, which is surrounded by golf tees and greens on both sides. South Course is one of the shorter of the four golf courses.[2]
On October 20, 1994, the plaintiff filed suit against the New Orleans City Park Improvement Association, the operators of the golf course, and its insurer (collectively referred to as "City Park") for damages, alleging that the City Park breached its duties: to warn non-golfers on Palm Drive of the danger of golf balls, to configure the golf course so that a danger was not created for non-golfers on Palm Drive, and to provide a protective barrier between the golf course and Palm Drive.
Subsequently, City Park filed a motion for summary judgment, asserting that: 1) the plaintiff jogged through the golf course between two clearly visible greens, which was not a hidden peril that required a warning or protective barrier; 2) the risk was ordinary; and 3) it was not reasonably foreseeable that a golfer would hit a ball so far to the right that a non-golfer would be injured. The trial court granted its motion. The court of appeal reversed the trial court and remanded the case for further proceedings, finding that there were issues of material fact relating to City Park's duty. City Park filed a writ of certiorari, which this Court denied. City Park filed a second motion for summary judgment, which the trial court denied. On October 16, 2000, this matter went to a jury trial before the Honorable Kim Boyle, Judge Pro Tempore.
After a trial on the merits, the jury found City Park negligent and awarded judgment in favor of the plaintiff in the amount of $13,750 for past, present and future physical pain and suffering; $15,000 for past, present and future mental distress; $30,000 for past medical expenses; $16,250 for permanent disfigurement, for a total damage award of $75,000. The jury *419 assessed City Park with 40% fault, and assessed the plaintiff with 60% comparative fault. City Park filed a Motion for Judgment Notwithstanding the Verdict. A remittitur was granted reducing the medical expenses from $30,000 to $11,680.52; thus, the total damages were reduced to $56,680.82. City Park appealed this ruling.[3]
On appeal, a three member panel of the Fourth Circuit Court of Appeal affirmed the trial court's ruling, with one judge dissenting. The court of appeal held that City Park owed a duty to a "passer-by not playing golf and not on the golf course" to exercise reasonable and ordinary care to keep the premises reasonably safe and take reasonable precautions, such as: placing warning signs, posting barriers between the golf tee and the road, configuring the course differently, or closing Palm Drive to pedestrians and bicycle traffic near the golf course. The court of appeal found no manifest error in the jury's allocation of fault and found that evidence supported an award for disfigurement despite the lack of expert medical testimony, noting the plaintiff's testimony concerning his testicle's disfigurement was credible and was corroborated by the medical records.
Dissenting, Judge Gorbaty reasoned that City Park did not breach its duty to protect the plaintiff, but instead, acted reasonably to protect the public from any foreseeable injury. He cited Sutter v. Audubon Park Com'n, 533 So.2d 1226, 1231 (La.App. 4th Cir.1988), writ denied, 538 So.2d 597 (La.1989), which sets forth the proper test for whether the property manager has acted reasonably in view of the probability of an injury to others. He further noted that the plaintiff "lived near City Park for many years, had jogged along this very path on numerous occasions and was aware that the path on which he was jogging traversed a golf course." Judge Gorbaty explained that the plaintiff conceded that he saw golfers as he was jogging. However, at trial, the plaintiff testified that he failed to see the signs indicating this was a golf course, i.e., "Golf Cart Crossing." Judge Gorbaty found that the majority's suggestions of preventive measures went beyond what is reasonable to protect against such a remote possibility of harm. Thus, he held that the trial court erred in finding City Park liable for the plaintiff's liability.

DISCUSSION
A reviewing court may not disturb a jury or trial court's findings, which are afforded vast deference, unless a particular finding of fact was "clearly wrong or manifestly erroneous." The determination of an unreasonable risk of harm is subject to review under the "manifest error" standard. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98) 708 So.2d 362, 365; Stobart v. State, 617 So.2d 880, 882 (La.1993); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
In general, landowners and land occupiers have a duty to refrain from acting negligently toward those they know or should have known will come onto their property. The duty of a governmental agency or municipality operating a public park is held to keep the premises in a reasonably safe condition for those using the park and to discover any unreasonably dangerous conditions on the premises and to either correct the conditions or warn of *420 the danger. Sutter, supra; Godfrey v. Baton Rouge Recreation and Parks Commission, 213 So.2d 109 (La.App. 1st Cir. 1968).
This issue of a non-golfer getting struck by a golf ball while jogging near a golf course is res nova in this Court. In other jurisdictions golf course owners have been found liable to non-golfers under certain circumstances for failing to maintain the premises in a reasonably safe condition. In Lexington Country Club v. Stevenson, 390 S.W.2d 137 (Ky.1965), the owners were found liable when a car passenger was struck in the eye by a golf ball while the vehicle was in the clubhouse driveway that crossed a frequently used golf fairway; the court noted that there were no warning to motorists and no special regulation of play at the hole. Id. See also Westborough Country Club v. Palmer, 204 F.2d 143 (8th Cir.1953). A golf course owner was found liable when an automobile passenger was struck by a golf ball where the hole was adjacent to a frequently used highway in Gleason v. Hillcrest Golf Course, Inc., 148 Misc. 246, 265 N.Y.S. 886 (1933). In another case, a golf course owner was held liable when a boater, traveling down a river flowing through a golf course, was struck by a golf ball where no warning signs were posted relating to flying balls. Kirchoffner v. Quam, 264 N.W.2d 203 (N.D.1978).
Although res nova in this Court, the Fourth Circuit Court of Appeal in Sutter, supra, provided an excellent analysis of the liability of public parks. There, the court noted that a governmental agency, or a municipality operating a public park is required to use reasonable or ordinary care to keep the premises reasonably safe for those using the park. In furtherance of such, the operator should furnish equipment and services to prevent injury from conditions which foreseeably may cause injury. However, the operator is not the insurer of its patron's safety, but is liable only for injuries resulting from its negligence. Id.
In Sutter, a visitor was shot in Audubon Park's Shelter No. 12 restroom by an unknown assailant and rendered a paraplegic. The visitor brought a negligence action against Audubon Park Commission and its insurers. After a trial on the merits, the trial court found Audubon liable. On appeal, the court reversed the trial court's ruling holding that Audubon's restroom did not present a foreseeable or unreasonable danger against which Audubon had a duty to protect or warn. The court reasoned that there was no history of any violent crimes occurring in the shelter and the shelter's location or physical design did not present an unreasonable risk to the park's visitors. The court noted that the shooting was random and unforeseeable. Audubon Park therefore had no duty to anticipate this random act of violence.

Duty-Risk
We now turn to the issue before this Court, which is whether City Park had a duty to protect a non-golfer against injury from being struck by a golf ball. In order to determine whether liability exists on the part of a public body, Louisiana has adopted a duty-risk analysis. Cormier v. T.H.E. Ins. Co., 98-2208 (La.1999); 745 So.2d 1; Stroik v. Ponseti, 96-2897 (La.9/9/97); 699 So.2d 1072; Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94); 646 So.2d 318; Berry v. State Through Dep't of Health and Human Resources, 93-2748 (La.5/23/94); 637 So.2d 412; Roberts v. Benoit, 605 So.2d 1032 (La.1991). According to Daye v. General Motors Corp., 97-1653 (La.9/9/98); 720 So.2d 654, the duty-risk analysis is employed on a case by case basis. See, Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, *421 1369 (La.1984). Under the duty-risk analysis, the plaintiff must satisfy the following requisites to prove negligence; the plaintiff must prove that: 1) the conduct in question was a cause-in-fact of the resulting harm, 2) the defendant owed a duty of care to the plaintiff, 3) the defendant breached that requisite duty and 4) the risk of harm was within the scope of protection afforded by the duty breached. Pitre v. Louisiana Tech University, 95-1466 (La.5/10/96); 673 So.2d 585. If the plaintiff fails to prove any one of the elements, the defendant is not liable. Id. This Court is obligated to decide whether City Park presented an unreasonable risk of harm to non-golfers based upon the facts of this case. Determining whether a risk is unreasonable requires a "balance of the intended benefit of the thing with its potential for harm and the cost of prevention." Id. citing Socorro v. City of New Orleans, 579 So.2d 931, 939 (La.1991). Also, in determining negligence, we must consider the "obviousness" and the "apparentness" of the complained of condition. Id. If the facts demonstrate that the complained of condition was obvious to all, the condition is not unreasonably dangerous and the defendant owes no duty to the plaintiff. Id.
We begin our duty-risk analysis by examining the "duty" owed by City Park to the non-golfer.
City Park argues that it had no duty to protect a non-golfer traveling the roads traversing the golf course against injury from an errant golf shot because the risk of a non-golfer getting struck by a golf ball was "obvious, reasonable, and minuscule." City Park concedes that it had a duty to discover any unreasonably dangerous condition, correct it or warn others of the condition. Nonetheless, City Park acted with reasonable care under the circumstances. In the alternative, City Park argues that if it had a duty to warn because of a hidden danger, it fulfilled that duty by adequately warning entrants to the park of possible golf activity, erecting signs regarding golfing, i.e., "golfers only beyond this point," "golf cart crossings," and designing the golf course so as to avoid the possibility of injury. City Park concludes that the plaintiff failed to prove that it acted unreasonably.
In order to properly analyze the "duty" element, we must consider whether these circumstances presented an unreasonable or foreseeable danger to the non-golfer which City Park had a duty to protect or warn against.
We find that the plaintiff is precluded from recovery because of his familiarity with the park and the golf course. We note that the plaintiff testified that he grew up near City Park, lived 13 years of his adult life a mile from City Park, had previously jogged that route, knew that the route traversed a golf course, and observed golfers as he was jogging that day. This non-golfer therefore was warned and should have anticipated encountering golf balls when jogging near the vicinity of a golf course because the risk of injury was obvious and readily observable.[4] City Park under these circumstances owed no duty to provide additional warnings.
In Pitre v. Employers Liability Assurance Corporation, 234 So.2d 847 (La. App. 1st Cir.1970) writ denied, 256 La. 617, 237 So.2d 398 (1970), the plaintiff's son was struck in the head by a patron, who was winding up to pitch a baseball at a concession stand at the Thibodaux Fireman's Fair held on public school grounds. *422 The court noted that there were no barriers or areas marked off separating the concession participants and mere spectators. This Court held that to find negligence, a risk must be both foreseeable and unreasonable. "Ordinary care requires only that precautions be taken against occurrences that can and should be foreseen; it does not require that one anticipate unusual and improbable, though entirely possible happenings." Id. at 852, citing Rouseo v. Gauche-Connor Co., 8 Orleans App. 216, 1911 WL 1863.
In Pitre v. Louisiana Tech, supra, where a student was paralyzed after sledding down a slope in the snow on a large garbage can lid which collided with the concrete base of a light pole, this Court held that the university owed no duty to the plaintiff. The Court found that under a duty-risk analysis, "the obviousness and apparentness of a potentially dangerous condition are relevant factors to be considered." The Court noted that if the facts of a particular case show that the risk is obvious to all, then the risk is not unreasonably dangerous and the public entity does not owe a duty to the plaintiff. See also Cates v. Beauregard, 328 So.2d 367 (La.1976), where a teenager "shinnied up a utility pole to cut an electric wire," this Court found that the plaintiff was precluded from recovery because he, knowing a little about electricity, should have known the risk involved in shinnying up a pole to cut an electric wire.
After considering the facts of this case, we find that the remedies required by the court of appeal's ruling which included erecting barriers, reconfiguring the golf course, or closing off the street to non-golfers, i.e., pedestrians or bicyclists, would be prohibitive considering that this was an isolated incident of injury. With regard to erecting barriers, we note that: 1) barriers would be required on both sides of the road to effectively protect any non-golfers from an accidental injury; 2) high barriers would substantially interfere with the game of golf, and 3) the cost of the barriers would be unreasonable considering that there has been no reported accidental injury of this nature since City Park has existed.
With regard to reconfiguring the park, Ronald Bernandi, City Park's head golf professional, Pat Dayton, the park's general manager and superintendent, and Mackel all testified that the four golf courses have had the same layout for over 75 years. The designs have never been substantially altered or reconfigured because of any unreasonable danger to a non-golfer, and the safety measures are no different than at any other public golf course in the country. Dayton testified that the park is open 365 days per year and every year the park attracts approximately fourteen million visitors with no pedestrian injury reported. For this reason, we maintain that the foreseeability of an injury of this kind occurring is "practically nil."
We also find that it would be unreasonable to close off the road through the South Course to non-golfers because of an isolated incident to one person. Closing South Course's roads would mean all roads traversing the golf course would be closed to the public, depriving them of the park's enjoyment. Thus, these suggestions go beyond what would be a reasonable response when we consider the magnitude of the risk of injury to non-golfers. Relying upon Goff v. Carlino, 181 So.2d 426 (La. App. 3d Cir.1965), which held that a park is negligent if the magnitude of the risk of injury outweighs the public park's social value, we note that the park's purpose is to provide the maximum recreation and leisure opportunities for the greatest number of people; City Park is an unfunded state agency, and golf is the largest single *423 source of revenue. If the roads were closed to pedestrians, barricades erected, or the golf courses redesigned, the cost to the park will be prohibitive, golfing will end, and the park will have to close, resulting in harm to the public. Thus, we conclude that the social value to the public is much greater than the risk of harm to non-golfers.
For these reasons, we conclude that the court of appeal erred in finding that City Park failed to exercise reasonable care to keep the golf course safe.
Considering the evidence presented in this case, we agree with City Park's rationale that it owed no duty to the plaintiff/non-golfer to protect him against injury from a golf ball. We also agree with Judge Gorbaty that this harm was ordinary and not unreasonable. We believe the plaintiff was familiar with this area and should have anticipated this danger. Therefore, we find that the jury and the court of appeal were clearly wrong in finding that the defendant owed the plaintiff a duty.

CONCLUSION
For the aforementioned reasons, we find the jury and the court of appeal's ruling manifestly erroneous, for City Park did not breach a duty owed to this plaintiff. Therefore, City Park is not liable for the plaintiff's injuries. In view of this finding, we pretermit discussion and consideration of the remaining elements. Accordingly, we reverse the judgment of the trial jury and the court of appeal and render judgment in favor of City Park, against the plaintiff, dismissing his suit.

DECREE
REVERSED.
NOTES
[1] The plaintiff's testimony was corroborated with the testimonies of Riggle and Moises.
[2] At trial, Frank Mackel, an expert in golf course design and development, testified that it is approximately 56 yards from Tee No. 3 to the green and 170 yards from Tee No. 3 to the site in question. Webster defines a "tee" as "a small peg stuck in the ground for holding a golf ball for a first stroke; the raised area from which a golfer tees off." A "hole" is "the small, cuplined depression into which the ball must be hit." "Green" is a "grassy lawn or plot; a putting green," which is "the smooth, closely mowed area at the end of the fairway on a golf course in which the hole is placed."
[3] There is nothing in the record to indicate that the plaintiff appealed the jury ruling that found him 60% comparatively at fault. Therefore, this is not at issue before this Court.
[4] Mackel testified that any observer would know that the road in question traversed a golf course because the green is visible from the bridge.