853 So.2d 24 (2003)
Douglas FAULKNER and Gloria Faulkner
v.
THE McCARTY CORPORATION, Owens Corning Fiberglas Corporation, Combustion Engineering, Inc., Garlock, Inc., Pittsburgh-Corning Corporation, Rock Wool Manufacturing Company, Anco Insulations, Inc., Acands, Inc., Rapid American, et al.
No. 2002-CA-1337.
Court of Appeal of Louisiana, Fourth Circuit.
June 11, 2003.
Rehearing Denied September 9, 2003.
*26 John F. Dillon, John F. Dillon, PLC, and Frank Swarr, Mickey P. Landry, Landry & Swarr, L.L.C., and Donni E. Young, Scott Galante, Ness, Motley, PA, New Orleans, LA, for Plaintiff/Appellant.
Francine Weaker, New Orleans, LA, and Henry E. Yoes, III, Yoes Law Firm, Lake Charles, LA, and Joseph P. Tynan, Montgomery, Barnett, Brown, Read, Hammond & Mintz, L.L.P., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge TERRI F. LOVE, Judge LEON A. CANNIZZARO JR.).
Judge TERRI F. LOVE.
Plaintiffs filed suit, asserting Douglas Faulkner was exposed to asbestos while working as a longshoreman for various stevedoring companies from 1951 through 1989. The trial was bifurcated, and the Board of Commissioners of the Port of New Orleans ("Dock Board") was the only defendant to opt for a bench trial. The remaining defendants submitted to trial by jury. The jury awarded judgment for the plaintiff, however at the bench trial, the judge entered judgment for the Dock Board. The trial court found that the Dock Board owed no legal duty to Mr. Faulkner to protect him from the injuries he sustained. For the following reasons we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
Plaintiffs, Douglas and Gloria Faulkner, filed suit on March 21, 1996, two of one hundred and fourteen plaintiffs claiming injuries due to asbestos exposure. Defendants named in the original petition were manufacturers, designers, marketers, distributors and sellers of asbestos and asbestos-related products. Plaintiffs later added the Board of Commissioners of the Port of New Orleans "Dock Board"). The case against the Dock Board was decided by the trial judge under La. R.S. 13:5105. The trial was bifurcated and the Board of Commissioner's liability was considered and adjudicated independent of the jury verdict. The instant appeal concerns only the judgment as to the Board of Commissioners for the Port of New Orleans.
Mr. Faulkner worked as a longshoreman from 1951 to 1989, loading and discharging cargo. Mr. Faulkner's exposure to asbestos occurred while working for numerous stevedoring companies, during which time he loaded and unloaded sacks of pure asbestos at the terminal, ways, roads, sheds and warehouses, namely the Cotton Warehouse, at the Port. Mr. Faulkner was never an employee of the Dock Board.
Douglas Faulkner died on August 21, 1998, of a malignant mesothelioma as a result of asbestos exposure. His son Douglas Faulkner, Jr., was substituted in the survival action and asserted a wrongful death claim.
*27 DISCUSSION
In their assignment of error, the plaintiffs assert that the trial court erred as a matter of law in concluding that there exists no legal duty for the Board of Commissioners of the Port of New Orleans. Duty is a question of law; the inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty. Perkins v. Entergy Corp., 98-2081, p. 22 (La.App. 1 Cir. 12/28/99), 756 So.2d 388, 403. As a question of law, duty is a legal question subject to de novo review on appeal. Id. Therefore, this Court will review de novo whether the trial court committed legal error in finding that the Dock Board owed no legal duty to the plaintiffs for Mr. Faulkner's injury.
The plaintiffs sought relief under the theories of negligence and strict liability at trial. However in the plaintiffs' appellate brief, they assert that the Dock Board breached its duty to warn Douglas Faulkner of the alleged unsafe conditions at the Cotton Warehouse. The plaintiffs' did not assert this claim at the trial court level; therefore, this Court will not consider it. [I]ssues not brought before the trial court cannot be considered on appeal. See Wilson v. Head, 97-0992, p. 1 (La.App. 3 Cir. 2/4/98), 707 So.2d 127, 128.
We will first address the plaintiffs' claims of negligence against the Dock Board.
The plaintiffs argue that the Dock Board owed a legal duty to the plaintiffs under the "public duty doctrine". The "public duty doctrine" states that a plaintiff cannot recover against a governmental entity or public official or their employees or officers unless he can prove facts which show that the defendant owed him a special duty outside of the duty owed to the general public. Boguille v. Chambers, 96-1173, p. 6 (La.App. 4 Cir. 12/11/96), 685 So.2d 582, 586 (citing Kramer v. Continental Casualty Co., 92-1131 (La.App. 3 Cir. 6/22/94), 641 So.2d 557).[I]n jurisdictions where the "public duty doctrine" is applied, it is subject to the important exception that liability can be founded upon the violation of a duty that would be generally considered to be owed to the public, if the statute or ordinance setting forth the duty indicates, by its language, that the duty is designed to protect a particular class of individuals. Stewart v. Schmieder, 386 So.2d 1351, 1358 (La.1980). However, our Supreme Court has rejected the "public duty doctrine". In Cormier v. T.H.E. Ins. Co., 98-2208 (La.9/8/99), 745 So.2d 1, the Court discussed the application of the "public duty doctrine as follows:
At the outset, we reject the application of the Public Duty Doctrine. Although the validity of the Public Duty Doctrine has remained somewhat speculative in the lower courts, this court in Stewart v. Schmieder, 386 So.2d 1351, 1358 (La.1980), and Fowler v. Roberts, 556 So.2d 1 (La.1989), rejected the doctrine. Viewing the holdings in Stewart and Fowler together, this court has found that even though the public nature of a duty does not preclude liability on the part of a governmental entity, this does not mean a governmental body will be liable each time a person's injury could have been prevented by a public official's proper performance of his duty. Duty and liability must be decided according to the facts and circumstances of each case. This is accomplished under the duty risk analysis.
Id. 98-2208, p. 5, 745 So.2d at 6.
Since the Supreme Court rejects the "public duty doctrine", the plaintiffs may not employ it to establish a duty on the part of the Dock Board. We are directed *28 by the Supreme Court to perform duty-risk analysis to the facts of this particular case.
The duty-risk analysis is employed on a case-by-case basis. McGuire v. New Orleans City Park Improvement Ass'n., XXXX-XXXX, p. 6 (La.1/14/03), 835 So.2d 416, 420. Under the duty-risk analysis, the plaintiff must satisfy the following to prove negligence; the plaintiff must prove that: 1) the conduct in question was the cause-in-fact of the resulting harm, 2) the defendant owed a duty of care to the plaintiff, 3) the defendant breached that requisite duty and 4) the risk of harm was within the scope of protection afforded by the duty breached. Id. (citing Pitre v. Louisiana Tech University, 95-1466 (La.5/10/96), 673 So.2d 585). If the plaintiff fails to satisfy one of the elements of duty/risk, the defendant is not liable. Pitre v. Louisiana Tech University, (La.1996), 673 So.2d 585, 589. Duty is a question of law: simply put, the inquiry is whether the plaintiff has any law statutory or jurisprudence- to support his claim. Absent a duty to the plaintiff, there can be no actionable negligence and hence no liability. Polk v. Blanque, 93-1740 (La.App. 4 Cir. 3/15/94), 633 So.2d 1382. Governmental agencies may be subjected to the imposition of duties by legislation, ordinance or rule of law, the breach of which may result in liability for damages to those injured by a risk contemplated by that duty. Cormier, 98-2208, p. 7, 745 So.2d at 8. The court's role is to determine whether there is any jurisprudential or statutory rule, or policy reason why, under the facts and circumstances of the case, the state would owe a duty to compensate plaintiff for his injuries. Id. 98-2208, pp. 7-8, 745 So.2d at 8.
The plaintiffs presented copious testimony regarding Mr. Faulkner's work experience, whether or not he worked with asbestos, and whether the Cotton Warehouse was properly ventilated. Plaintiffs' expert Frank Parker, III, an industrial hygienist, testified that the Dock Board should have been on notice about the danger of asbestos since 1943 when it hosted the Gulf Coast Safety Conference, where asbestos related issues were discussed. However, he also admitted that the conference was for shipbuilders and that the Dock Board representative was present only as a part of the welcoming committee. Mr. Parker then suggested a ventilation system that, in his opinion, should have been in place in the Cotton Warehouse at the time Mr. Faulkner worked there. Mr. Parker's opinions were directly refuted by the defense expert, Tracy Dodd, an expert in toxicology, environmental safety regulations, and health and risk assessment, who testified that Mr. Parker's ventilation plan would have actually made the Cotton Warehouse more dangerous, not just for the men working there, but for the surrounding neighborhoods. Ms. Dodd also suggested that Mr. Parker was using current knowledge and technology that was not available at the time Mr. Faulkner was injured. Lastly Mr. Parker admitted that traditionally it is the employer who is responsible for making the work conditions safe for its employees.
The plaintiffs failed to present any applicable statutory or jurisprudential rule that establishes the Dock Board owed a duty to the plaintiffs, during the time of Mr. Faulkner's employment, to protect him from the injuries he sustained. As such, since no duty existed, the Dock Board may not be found liable for Mr. Faulkner's injury.
The plaintiffs alternatively argue that the duty owed by the Dock Board to the plaintiffs is the product of the lessor/lessee relationship between the Dock *29 Board and Mr. Faulkner's various employers.
La. R.S. 9:3221 provides:
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone of the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
The exception to the rule of La. R.S. 9:3221 is that, even if a property owner contracts away his responsibility for maintaining his premises to his lessee, the owner can still be held liable if he knew or should have known of a defect in the property and failed to remedy it within a reasonable time. Audler v. Board of Comm'rs of the Port of New Orleans, 617 So.2d 73, 77 (La.App. 4th Cir.1993).
In the instant case we find that the evidence clearly demonstrates that when the Dock Board leased its warehouses, it gave complete control of those warehouses to the lessee. The Dock Board presented ample evidence that it was unaware of particular cargoes being stored at its warehouses. The Dock Board also showed that it was not aware that there was a defect in the ventilation system of its warehouses that it could remedy. The plaintiffs did not establish that the Dock Board knew or should have known about the lack of ventilation in its warehouses, and that the Dock Board, with this knowledge, failed to remedy the defect. The plaintiffs did not present evidence of the industry standard at the time of Mr. Faulkner's employment to show the Dock Board had notice of the defect, nor did the plaintiffs establish the Dock Board was aware that asbestos was being stored in its warehouses. Plaintiffs only posit assumptions and allegations to support their claims. Further, the plaintiffs' own expert admitted that it is the individual employers who would insure the safety of their employees, rather than the Dock Board. Since the plaintiffs did not establish that the instant case falls under the exception of La. R.S. 9:3221; the plaintiffs' assertion of duty under this statute is without merit.
The plaintiffs' claims fail the duty/risk analysis outlined in Cormier because the facts and evidence presented by the plaintiffs do not articulate a legal duty owed to Mr. Faulkner by the Dock Board to protect him from the injuries he sustained. Further, the plaintiffs fail to establish a duty under the lessor/lessee relationship provided for in La. R.S. 9:3221. We therefore find that the trial court was correct in ruling the plaintiffs did not establish the Dock Board owed a duty to Mr. Faulkner to protect him from his injuries.
We will now address plaintiffs strict liability claim. In order to maintain a cause of action for strict liability, plaintiffs must prove:
1) The thing which caused injury must be in the care, custody and control of the defendant;
2) The thing had a vice or defect which created an unreasonable risk of harm;
3) The injuries in question were caused by said defect.
See Borruano v. City of Plaquemine, 720 So.2d 62, 64 (La.App. 1 Cir.1998).
In Loescher v. Parr, 324 So.2d 441, 451 n. 7 (La.1975), the Supreme Court defined article 2317 "custody":
The things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. This relationship *30 will ordinarily be associated with ownership, but the guardianship will also belong to the bailee, the lessee, the usufructuary, the borrower for use and the repairmen, among others ... The owner may transfer the guardianship by transferring the thing to another who will bear such a relationship to the thing as to himself have the care of it.
To find defendant liable under a theory of custodial liability pursuant to La. C.C. art. 2317, it must be shown that defendant either "owned or had care, custody, or `garde'... and that under the circumstances... presented an unreasonable risk of harm which resulted in the plaintiff's damage." Ledet v. Montgomery Elevator Co. & XYZ, 94-0411, p. 5 (La.App. 4 Cir. 10/13/94), 644 So.2d 1075, 1078 (citing Rabito v. Otis Elevator, 93-1001, p. 15 (La.App. 4 Cir. 2/11/94), 633 So.2d 368, 376). The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction. La. C.C. Art. 2322. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise reasonable care. Id.
The plaintiff did not present sufficient evidence at trial to prove the Dock Board knew that asbestos was being stored in their warehouses. Joseph Orlesh, Jr., an employee of the Dock Board since 1973, testified that the Dock Board had no specific knowledge of what cargoes were being stored in its warehouses, and that once vessels cleared U.S. Customs, space that was leased from the Dock Board to load, unload and store cargo was in the sole control of the lessee. The warehouses were only defective with regard to the ventilation system, once asbestos was brought onto the premises. Under La. C.C. art. 2322 this precludes strict liability on the part of the Dock Board. Additionally, the Dock Board gave the lessees complete care, custody, and control over the warehouses, which precludes strict liability under La. C.C. art. 2317. Further, the plaintiffs did not establish that the Dock Board was aware of the danger of asbestos at the time of Mr. Faulkner's employment, such that it created an unreasonable risk of harm, making the Dock Board strictly liable for Mr. Faulkner's injuries.
Therefore, we find that the trial court was correct in finding that the Dock Board was not strictly liable for Mr. Faulkner's injuries.
CONCLUSION
For the foregoing reasons, we find that the trial court was correct in finding that the Dock Board was not negligent because it owed no legal duty of care to Mr. Faulkner, nor can the Dock Board be found strictly liable for Mr. Faulkner's injuries.
AFFIRMED.
CANNIZZARO, J., CONCURS WITH WRITTEN REASONS.
CANNIZZARO, J., CONCURS WITH REASONS.
I respectfully concur in the majority opinion to affirm the trial court judgment dismissing the plaintiffs' suit against the Board of Commissioners of the Port of New Orleans ("Dock Board"). In rendering judgment, the trial court concluded that the Dock Board owed no duty to Douglas Faulkner to protect him from the injuries he sustained, i.e., malignant mesothelioma.
The majority correctly holds that the Dock Board owed no duty to Mr. Faulkner under the "Public Duty Doctrine," as the *31 Louisiana Supreme Court expressly rejected the doctrine in Stewart v. Schmieder, 386 So.2d 1351, 1358 (La.1980), Fowler v. Roberts, 556 So.2d 1 (La.1989), and Cormier v. T.H.E. Ins. Co., 98-2208, p. 5 (La.9/8/99), 745 So.2d 1, 6. Thus, as the Court noted in Fowler, supra, duty and liability must be decided according to the facts and circumstances of each case using the duty-risk analysis. Fowler, 556 So.2d at 7.
The Supreme Court adopted the duty-risk analysis in Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). See also Mart v. Hill, 505 So.2d 1120, 1122 (La.1987). Under this analysis, the plaintiff must prove:
(1) the conduct in question was the cause in fact of the resulting harm;
(2) the defendant owed a duty of care to the plaintiff;
(3) the requisite duty was breached by the defendant; and
(4) the risk of harm was within the scope of protection afforded by the duty breached.
Mundy v. Dept. of Health and Human Resources, 620 So.2d 811 (La.1993); Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289 (La.1993). If the plaintiff fails to satisfy one of the elements of the duty-risk analysis, the defendant is not liable. McGuire v. New Orleans City Park Improvement Ass'n, XXXX-XXXX (La.1/14/03), 835 So.2d 416. The question of whether a duty exists in a particular set of circumstances is a question of law for the court to decide. Id.; Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1371 (La.1984). Whether a defendant has breached a duty is a question of fact. Mundy, supra.
The Dock Board's liability to the plaintiffs may arise under a theory of negligence, La. Civ.Code art. 2322[1], or a theory of strict liability, La. Civ.Code art. 2317[2]. Under both articles, liability hinges on whether the defendant has breached his duty to the plaintiff. Hunter v. Department of Transportation and Development, 620 So.2d 1149, 1151 (La.1993). While the basis for determining the existence of the duty is different in article 2317 strict liability cases and in ordinary negligence cases, the duty that arises is the same. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982). The distinction between recovery under these theories is that under strict liability a plaintiff is relieved of proving the owner or custodian of the thing that caused the damage knew or should have known of the risk involved. Campbell v. Louisiana Department of Transportation and Development, 94-1052, p. 4 (La.1/17/95), 648 So.2d 898, 901.
In general, the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm. Id.; St. Hill v. Tabor, 542 *32 So.2d 499, 502 (La.1989); Harris, 455 So.2d at 1369; Walker v. Union Oil Mill, Inc., 369 So.2d 1043, 1047 (La.1979). A duty may be imposed by legislation, ordinance or rule of law. Cormier v. T.H.E. Ins. Co., 98-2208 (La.9/8/99), 745 So.2d 1.
In the instant case, the evidence at trial showed that the Dock Board had leased its warehouses to several stevedore companies for the storage of cargo that they, not the Dock Board, discharged from ships in accord with contracts between them and the vessels' owners and/or steamship agents. It is undisputed that the damage claimed by the plaintiffs, i.e., Mr. Faulkner's mesothelioma, was caused by asbestos, a hazardous material that the stevedore companies transported to and stored temporarily on the Dock Board's premises. It is also undisputed that the stevedore companies, including Mr. Faulkner's employers, had exclusive control over the asbestos cargo.
The plaintiffs put forth no direct evidence at trial that Mr. Faulkner's illness was caused by the ventilation or lack of ventilation or some other defect on the Dock Board's premises. Although the plaintiffs' industrial hygiene expert, Frank Parker, testified that the Dock Board should have had installed a ventilation system in the Cotton Warehouse at the time Mr. Faulkner worked there, the defendants' expert, Tracy Todd testified that Mr. Parker's opinion was based on current technology that was unavailable at the time Mr. Faulkner worked as a longshoreman. Furthermore, the plaintiffs put forth no expert testimony as to the industry standards in effect during the 1950's, 60's, 70's and 80's, the time of Mr. Faulkner's employment, to show that the Dock Board's warehouses were defective or unsuitable for storing asbestos containing cargo. Absent such evidence, the Dock Board cannot be held liable for the plaintiffs' damages based on its negligent failure to safely maintain its premises.
The plaintiffs contend that the Dock Board knew or should have known in the 1940's that asbestos cargo on its premises posed a danger to longshoremen such as Mr. Faulkner. Mr. Parker, the plaintiffs' expert, testified that the Dock Board should have been on notice that asbestos was a potential health hazard no later than World War II, in view of the work done in the maritime industry by the public health service. He further claimed that the Dock Board's attendance at the Gulf Coast Safety Conference in New Orleans in 1943, where asbestos related topics were addressed, provided the board with knowledge of the dangers inherent in the handling and storage of asbestos.
Joseph M. Orlesh, Jr., a witness for the Dock Board, testified that he worked for the board in various positions for thirty years, at one point directing the operations of the Port of New Orleans. Mr. Orlesh explained that the stevedore companies would lease the Dock Board's warehouses long before their cargoes ever entered the port. He further explained that the stevedores' documentation and cargo manifests from the ships, on which the Dock Board calculated its rent, generally were delayed thirty to forty-five days, and thus the board never possessed information regarding the manifest or cargo coming off the ships. Mr. Orlesh denied that the Dock Board had specific knowledge of any individual vessels importing or exporting asbestos. The plaintiffs offered no evidence to controvert Mr. Orlesh's testimony.
As to the Gulf Coast Safety Conference in 1943, the evidence in the record indicated the conference was related entirely to shipbuilding and that a representative of the Dock Board appeared merely as a member of the City's welcoming committee, along with representatives from the *33 Mayor's office, the Chamber of Commerce, and Young Men's Business Club. The plaintiffs put forth no evidence that the Dock Board built ships or vessels of any kind or owned or operated shipyards at any time from which one could reasonably conclude that the board knew or should have known of the dangers that asbestos posed to longshoreman working on its premises.
Because the plaintiffs did not prove by a preponderance of the evidence that a defect in or on the Dock Board's premises posed an unreasonable risk of harm and caused Mr. Faulkner's injury, the Dock Board cannot be held liable for the plaintiffs' damages. In the absence of evidence to show that the Dock Board knew or should have known of the safety hazards asbestos posed to longshoreman working on its premises or that it had custody and control of the asbestos on its premises, the plaintiffs have not established that the Dock Board had a duty to warn and/or protect Mr. Faulkner from the risks associated with handling the asbestos while on its premises.
As to strict liability under La. Civ.Code art. 2317, the plaintiff bears the burden of proving: (1) the thing that caused the plaintiff's injury or damage was in the care, custody and control, or garde, of the defendant; (2) the thing had a vice or defect which created an unreasonable risk of harm; and (3) the injury and/or damage were caused by the vice or defect. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990); Chaplain v. American Empire Surplus Lines Insurance Company, 98-1372 (La.App. 4 Cir. 3/31/99), 731 So.2d 973.
As previously stated, the plaintiffs have not demonstrated by a preponderance of the evidence that the Dock Board's premises posed an unreasonable risk of harm to Mr. Faulkner. Similarly, they have not shown how the presence of asbestos, a foreign object brought onto the Dock Board's premises of which the stevedore companies had exclusive control, created a defect in the premises for purposes of establishing liability under La. Civ.Code art. 2317. In view of this, the Dock Board cannot be held strictly liable for the plaintiffs' damages.
In addition to arguing the applicability of the Public Duty Doctrine, which has been rejected in this case, the plaintiffs contend that La. R.S. 34:21 A(1)[3] and La. R.S. 34:25 B[4] impose a duty on the Dock Board to be a prudent administrator of its premises. Such a duty, the plaintiffs argue, encompassed providing a safe environment for workers such as Mr. Faulkner who handled asbestos cargo within the Dock Board's warehouses.
In Boguille v. Chambers, 96-1173 (La.App. 4 Cir. 12/11/96), 685 So.2d 582, this Court expressly stated that La. R.S. 34:21 A(1) and La. R.S. 34:25 B allow the Dock Board to use its discretion when regulating *34 the various facilities under its administration and noted that La. R.S. 9:2798.1(B) grants the Dock Board qualified immunity from liability based upon the exercise or performance or the failure to exercise or perform its discretionary acts. Id., 685 So.2d at 588-89. Thus, in the absence of a nondiscretionary duty imposed on the Dock Board by statute or ordinance to protect third parties from risks encountered in handling hazardous materials on its premises, the trial judge did not err in concluding that the Dock Board was not liable for Mr. Faulkner's injuries.
In summary, the plaintiffs did not prove that the Dock Board owed a duty to Mr. Faulkner under theories of negligence or strict liability to warn and/or to protect him from the risks associated with the handling of asbestos on its premises. Thus, in the absence of a statute or ordinance imposing such a duty on the Dock Board, the trial court did not err in determining the Dock Board was not liable for the damages resulting from Mr. Faulkner's mesothelioma.
NOTES
[1] La. Civ.Code. Art. 2322 provides, in part:

The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise or reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
[2] La. C.C. art. 2317 provides:

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
[3] La. R.S. 34:21 A(1) provides:

The [Dock Board] shall regulate the commerce and traffic of the port and harbor of New Orleans in such a manner as may, in its judgment, be best for the maintenance and development thereof.
[4] La. R.S. 34:25 B provides:

The [Dock Board] shall by proper ordinances make rules and regulations for the conduct, management, and control of the port, its commerce, traffic and navigation, the waters and landings within its territorial jurisdiction, the structures and other facilities under its administration, and for the government thereof, which may, in its judgment, be necessary or proper in the exercise of the powers now conferred upon it by the constitution and statutes of the state of Louisiana, and shall, from time to time, enlarge, modify, or change such rules and regulations in its discretion.